[No. 1577. Decided April 17, 1896.]

Eva Swash, *Respondent*, v. B. L. Sharpstein, *Executor*, *Appellant*.

STATUTE OF FRAUDS — PAROL AGREEMENT TO DEVISE LANDS.

A parol agreement to convey real estate by will, made in settlement of a law suit, is not enforceable under the statute of frauds, when there had been no act of part performance on the part of the decedent, although valuable rights may have been relinquished by the intended devisee in consideration of the contract. (Dunbar, J., dissents.)

A parol contract to devise a certain portion of one's estate, including both realty and personalty, is void under the statute of frauds, for the reason that being void in part it is void as a whole.

Appeal from Superior Court, Walla Walla County. —Hon. William H. Upton, Judge. Reversed.

*John L. Sharpstein*, and *Wellington Clark*, for appellant.

*Blandford & Gose*, for respondent.

The opinion of the court was delivered by

Scott, J.— The plaintiff brought this action against the defendant, as executor of the last will of one Orley Hull, deceased, to compel said executor to perform an alleged parol agreement entered into between the plaintiff and said Hull, whereby he agreed to devise to her one-fourth of his estate at the time of his death.

Said Orley Hull and one Mary Hull were husband and wife and plaintiff was their daughter. Mary Hull died intestate on the 11th day of December, 1886, at which time said parties were the owners of a large and valuable estate situated in the territory of Washington and mostly in Walla Walla county, all of which was community property. No attempt was made to administer upon the estate of said Mary Hull until March, 1890, at which time the plaintiff and one of her sisters, a Mrs. Swezea, petitioned for the appointment of an administrator. The estate at that time was, and from the death of Mary Hull had been, in the possession of the husband. A contest over the appointment of an administrator was had which resulted in the appointment of one Winans, and an appraisement of the estate was made and returned to the superior court of Walla Walla county, which showed her estate to be worth less than $3,000. Upon the return thereof the plaintiff and her said sister began proceedings to have a large amount of other property, including the homestead upon which said Hull and wife resided and other real estate, added to the inventory of said estate. While these proceedings were pending, said Orley Hull began a suit against this plaintiff and her said sister in the superior court of Walla Walla county, for the purpose of having said homestead, which had been obtained under the United States homestead laws, declared his separate property. A decree was rendered in his favor, whereupon this plaintiff and her said sister gave notice of an appeal to the supreme court. While they were perfecting the same, it is claimed that the parol agreement in question was entered into between the parties, which the plaintiff contends was substantially performed by her. Said Orley Hull died on the 21st day of April, 1892,

leaving a will in which he bequeathed to this plaintiff the sum of $500 and no more of his estate, which was of the value then of $40,000 or more, and consisted of both real and personal property.  He had taken a second wife to whom he left one-fourth of his estate, and the remainder of it was devised to two other daughters, one of whom was Mrs. Swezea, who had joined with the plaintiff in the previous litigation against him, said three daughters being his only surviving children.

This action was first tried to a referee in the superior court of Walla Walla county, who found against the plaintiff, but his findings were set aside by the judge of said court, and a decree was rendered in her favor, from which this appeal is prosecuted by the defendant.  Several sets of briefs have been filed herein and the cause has been twice argued in this court.  A number of difficult questions have been presented and ably argued on both sides, but we have not found it necessary to discuss all of them in arriving at a determination, owing to the view we have finally taken of the law applicable to the case.

The making and terms of said contract, as alleged by the plaintiff, were as follows:  "That during the pendency of the proceedings aforesaid, upon the part of plaintiff and Mrs. Swezea, to have the other property added to the inventory of their mother's estate, and of their appeal to the supreme court from the action brought by their father to have the homestead declared his separate property, her father proposed to her and Mrs. Swezea that if they would discontinue all further proceedings in the prosecution of said appeal and all further proceedings to have said other property added to the inventory of her mother's estate and would agree to a settlement and termination of

the administration of said estate and the discharge of
the administrator, and would give and turn over to
their father all the right, title and interest which they
and each of them had in and to the estate of their said
mother, with the full custody and management, control
and power of alienation thereof, and in no way inter-
fere with or obstruct his full and complete management
and control of the same, he would on his part devise and
bequeath to the plaintiff and to Mrs. Swezea, each, by
his last will and testament a one-fourth interest in his
whole estate at the time of his death," and acceptance
and performance of this agreement by the plaintiff
and Mrs. Swezea are alleged.  It appears, however, that
the only direct act performed was the signing of a
stipulation by said parties to discharge the adminis-
trator and terminate the administration of the estate
of Mary Hull.   But it appears that nothing further
was done by either the plaintiff or Mrs. Swezea in the
prosecution of the appeal from the judgment rendered
in the action aforesaid, and that plaintiff lost her
rights therein by reason of the lapse of time, and
that thereby the decree which had been rendered in
the superior court became final and settled the title to
the homestead tract in her father.   It is conceded that
neither the plaintiff nor Mrs. Swezea gave, or offered
to give, their father a deed of their interest in and to
any of the lands, and it does not appear that he ever
asked for one.   The record title to all of said lands
stood in his name, and he at all times after the decease
of their mother was in full and exclusive possession
thereof.   It also appears that several tracts of the re-
maining lands other than the homestead and a large
amount of personal property were at various times
sold by him and the proceeds of one eighty acre tract
were divided between the plaintiff and Mrs. Swezea;

and it is contended by the plaintiff that by reason of her acquiescence in the sale of said personal and real property and a failure to object thereto, and by reason of the lapse of time, etc., the title so attempted to be conveyed by her father became perfected in the respective grantees, and therefore no other conveyance relating thereto can at this time be held to be necessary. It appears, however, that one tract, known as the "Eureka Flat Farm," which was also owned by her father and mother as community property, still remains and is a part of the property of said estate. As to this, it is contended by the plaintiff that it was never understood by any of the parties that a deed from the plaintiff and Mrs. Swezea to her father was necessary to vest the complete title to any of these lands in him; and that as he had never asked for one and had always had the full and exclusive management and control of said real estate and dealt with it as his own, the failure to execute such a deed, if one was necessary, should not bar her of her right to a performance of the contract upon his part at this time; and, furthermore, that if the court should hold that such a deed is necessary, she asks to be permitted to give one at this time. It does not appear that Mrs. Swezea is willing to give such a deed, but if the contract can be regarded as a severable one so far as the plaintiff is concerned, and has been sufficiently established in law, we could see no objection, under the circumstances of this case, to her giving such a deed now.

The making of this contract is disputed by the defendant, but little or no testimony was introduced to contradict the testimony upon the part of the plaintiff. The attack of the defendant was mainly directed against the validity of the contract under the statute of frauds re-enacted here, and the important question

to be determined is whether there had been a suffi-
cient performance of it, conceding that it was entered
into, to entitle plaintiff to a specific performance
thereof. The proof upon the part of the plaintiff was
clear and explicit as to the terms of this contract, but
the only performance of it upon her part was in sign-
ing the stipulation to discharge the administrator and
terminating the administration of her mother's estate,
and in allowing her appeal from the action aforesaid
to lapse. It does not appear that her father did any-
thing toward the performance of said contract, and
under its terms there was nothing for him to do ex-
cept to devise to the plaintiff and Mrs. Swezea one-
fourth of the estate of which he died seized. Upon
the termination of the administration of her mother's
estate, it appears that certain of the personal property
was divided between the parties, of which the plaintiff
received a portion; but the division of this personal
property and the further division between plaintiff
and Mrs. Swezea of the proceeds of the eighty acre
tract afterwards sold by their father, cannot be con-
sidered as a part performance of the contract, for, by
the terms thereof, he was to have all of said property,
both real and personal, and such division was, in fact,
inconsistent with the contract. Nor were these mat-
ters claimed by the plaintiff to be a part perform-
ance. She claimed that the same was a gift to her
and that the expressed purpose of her father in
giving said property to Mrs. Swezea and herself was to
place them upon an equal footing with the other sis-
ter to whom he had previously given property.

It satisfactorily appears to all the members of this
court who sat upon the trial of the cause that some
kind of a contract was entered into between the par-
ties at the time alleged. The parties were at that

time relying upon their legal rights and undertaking to maintain their claims in the courts, and were proceeding adversely to each other; but, upon the making of this agreement, all of these proceedings were discontinued and peace and harmony were established between them. By allowing said appeal to lapse, plaintiff lost valuable rights, for, while the question was then undetermined, under recent decisions of this court it has been held that a homestead acquired under the United States homestead laws is the community property of the husband and wife; and if the testimony offered by the plaintiff in support of this contract could be considered as legally sufficient, or would show enough done to authorize its enforcement, a majority of the members of the court who sat upon the trial could not agree to set aside the contract, or find it otherwise than as testified to by the witnesses for the plaintiff, which would result in an affirmance of the judgment.

One of the strongest circumstances in support of the making of the contract as alleged is the fact that Mrs. Swezea, whose interests were directly and adversely affected by it, if a valid one was entered into, was not called by the defendant to dispute it or testify in relation thereto. The circumstances connected therewith all go to show that one was entered into, and that the plaintiff is acting in good faith in the transaction, for if advocating a false claim she would probably have fixed a different time for the making of the contract, and not one when Mrs. Swezea was present and participated therein; and, considered only from the standpoint of the apparent truthfulness of the testimony, the claim made by the plaintiff appeals to the court so strongly that relief would be gladly extended were we authorized to do so under the law.

But it must be remembered that a just claim cannot always be enforced by the courts, and furthermore that it was the plaintiff's father who undertook to make this unequal and seemingly unfair disposition of his property, and the law recognizes such a right generally in the parent. The reasons which led thereto in this instance are unknown to us, and of course are none of our concern.

But, conceding that the contract was entered into as testified to by the plaintiff's witnesses, was there a sufficient part performance to avoid the statute of frauds? If not, and conceding also that there was a substantial performance upon the part of the plaintiff, it is difficult to conceive what more could have been done during the life time of the father to give it effect against the statute, unless the making of the will would have relieved it of the objection, even if afterwards revoked. But no definite time was fixed for the making of such will, and there was no proof that any will was made other than the one probated. The law is well settled that a party may enter into a valid contract to make a will in favor of another party, and also that a parol contract to make such a will may be sufficiently performed during the life time of the parties, so that a court of equity will compel a specific performance. But there is a conflict in the cases where the kind and degree of part performance necessary for such a purpose is considered. Some of the cases cited by the plaintiff support her contention that there was a sufficient part performance to avoid the statute of frauds. One of the strongest is probably that of *Johnson v. Hubbell,* decided in New Jersey in 1855, 10 N. J. Eq. 332 (66 Am. Dec. 773); although the facts in that case showed a greater degree of part

performance than appears in this, for there deeds were executed, and the father obtained title to a tract of land by a conveyance from his daughter, which his son had conveyed to the daughter in pursuance of the contract to make the will. But, while the relief asked was not granted in that case, the opinion holds that, "if one party to a parol agreement has wholly or partially performed it on his part, so that its non-fulfillment by the other party is a fraud, the court will compel a performance." It will be observed, however, that of the numerous cases to which attention is called in the opinion none are cited in support of this proposition.

*Van Duyne v. Vreeland*, 12 N. J. Eq. 142, decided in 1858, also supports the contention of the plaintiff, although the court in that case found that there had been a partial performance of the contract by the other party.

Another case is that of *Maddox v. Rowe*, 23 Ga. 431 (68 Am. Dec. 535), where a father agreed with his son that, if the son would convey to him a lot of land, he would devise to the son two other lots of land. The court decreed a specific performance of the contract. In that case, however, the father undertook to give effect to the contract by executing a will which was held to be void. But the court considered it as evidence in support of the contract.

We shall not undertake to review the cases cited by the plaintiff, but content ourselves with saying that none of the others to which our attention has been called are as nearly in point as the ones above mentioned. Many of them make use of the same general expression that a court of equity will decree a performance where a non-performance will result in a fraud upon the other party, and that the statute of

frauds was designed to prevent frauds and not to facilitate them, and so far as these general statements are concerned they, in a measure, support the plaintiff's case as contended, for it appears that under this contract she has lost valuable rights beyond recovery, if the contract cannot be enforced; yet none of the other cases, when considered with reference to the facts involved, would support a case like this one. In many of them the action was founded upon a written agreement, and in others the contract was to convey specific property of which possession had been given during the life time of the testator, as in *Bird v. Pope*, 73 Mich. 483 (41 N. W. 514).

. The cases cited that do support the plaintiff's contention are overborne by the weight of authority, and the rule seems to be well settled that to enforce a parol contract to make a will there must have been at least some substantial thing done by the testator in his life time in pursuance of that contract. This seems to be required for the purpose of placing the proof of the contract beyond all legitimate controversy, and bears directly upon the question of the proof. The fraud to be prevented is the danger of the fraudulent establishment of such contracts, and this is the purpose of the provision of the statute; and the cases which hold that a performance upon the part of one party alone is sufficient seem to lose sight of this fact and assume that the contract can as well be established by the acts of one party alone, against the statute; although the case of *Van Duyne v. Vreeland, supra*, holds that the defendant may admit the making of the contract and yet make use of the statute to defeat it.

If the contract is void as to the real estate, the plaintiff cannot enforce it as to the personalty either, for being void in part it is void as a whole. *Ellis v.*

*Cary,* 74 Wis. 176 (17 Am. St. Rep. 125, 42 N. W. 252); *Pond v. Sheehan,* 132 Ill. 312 (23 N. E. 1018); *Gould v. Mansfield,* 103 Mass. 408 (4 Am. Rep. 573).

Some of the courts at different times have expressed a regret that the exceptions to the rules laid down by the statute of frauds have been established, and the disposition at the present time is very general against any further relaxation. By the weight of authority at this time the rule seems to be settled that in order to enforce specific performance of a parol contract to convey land, possession must have been transferred. The supreme court of the United States, in *Purcell v. Miner,* 4 Wall. 513, decided in 1866, strongly support this doctrine. *Pond v. Sheehan, supra,* decided by the supreme court of Illinois in 1890, holds that delivery is essential. Many other cases are cited in the opinion there rendered. *Johns v. Johns,* 67 Ind. 440, holds likewise, and the supreme court of Pennsylvania, in the case of *Pugh v. Good,* 3 Watts & S., 56 (37 Am. Dec. 534), holds that delivery of possession pursuant to the contract is the test of part performance. We shall not call attention to all of the cases so holding, but there is another line which, while not directly passing upon this question, holds that a part performance by one of the parties is not sufficient and that there must have been a part performance by the other party also. Some of them are *Wallace v. Long,* 105 Ind. 522 (55 Am. Rep. 222, 5 N. E. 666); *Austin v. Davis,* 128 Ind. 472 (25 Am. St. Rep. 456, 26 N. E. 890); and *Ellis v. Cary, supra.*

That payment and acceptance of the purchase price is not a sufficient part performance is now well settled by the later cases. Pomeroy, Contracts, § 112, and cases there cited. See, also, *Gould v. Mansfield, supra,* and *Hale v. Hale,* (Va.) 19 S. E. 739, in relation to parol

agreements to make mutual wills, holding such contracts invalid where wills were made accordingly but were subsequently revoked on one side.

In this case nothing was done by Hull in pursuance of this contract.  The possession of no property was transferred thereunder to any of the parties.  He had actual possession of all of it except much the smaller part of the personalty which was in the hands of the administrator, and in which Hull had an interest. This was amicably divided between the parties as aforesaid.  But, as seen, such division and transfer was no part performance of the contract alleged by the plaintiff, for the terms of the contract did not call for it.

If the making of a previous will in pursuance of the contract would not have been a sufficient part performance by Hull, then the nature of this contract was such that it would not admit of a sufficient part performance to make it valid, for there was nothing else for him to do in the premises.  Conceding all that the plaintiff claims with reference to the proof, we are still forced to the conclusion, under the authorities, that she is not entitled to a decree for a specific performance, for we are not disposed to add to or extend the exceptions to the rule established by the statute to meet the seeming hardships of a particular case.  The fault rests with the parties in not putting their contracts in writing.  The rule should not be infringed as freely after the death of one of the parties as in cases where the contract was to be performed during his life time.  If a period of years had been fixed by the contract for the conveyance of this property by Hull to the plaintiff, instead of a devise, and the parties were all living, under the overwhelming weight of authority there was not a sufficient part

performance to authorize its specific enforcement. Why should the case be different, or more liberally viewed, as to alleged parol contracts to convey by will? The party seeking to enforce it should be in no more favorable position certainly than where the conveyance was to be by deed, for in the latter case the claim generally could be more easily met and disputed.

Reversed.

HOYT, C. J., and GORDON, J., concur.

DUNBAR, J., dissents.

ANDERS, J., not sitting.