[No. 11389. Department Two. December 31, 1913.]

VIOLA McCLANAHAN, *Appellant*, v. PEARL EUNICE McCLANAHAN *et al.*, *Respondents.*[1]

FRAUDS, STATUTE OF—ORAL CONTRACT TO MAKE WILL. An oral agreement between husband and wife to make wills whereby each left all property to the other, is within the statute of frauds and void.

SAME—PART PERFORMANCE—WILLS. The execution of a will is not such part performance of an oral contract to leave property to another as to take the contract out of the operation of the statute of frauds.

WILLS—REVOCATION. A will executed in pursuance of an oral contract to leave property to another, void under the statute of

[1]Reported in 137 Pac. 479.

frauds, is effectually revoked by the making of a subsequent will without notice to the beneficiary.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 12, 1913, on the pleadings, dismissing an action for specific performance. Affirmed.

*Tucker & Hyland,* for appellant.

*Reynolds, Ballinger & Hutson,* for respondents.

Mount, J.—This action was brought by the plaintiff to specifically enforce an alleged oral contract, entered into between the plaintiff and her husband during his lifetime.

The complaint alleged, in substance, that, on the 14th day of March, 1891, the plaintiff and Enoch C. McClanahan intermarried and remained husband and wife until the death of Enoch C. McClanahan, on the 15th day of May, 1912; that, up to the time of his death, the plaintiff resided with the deceased as his wife; that the plaintiff, at the time of her marriage to the deceased, was possessed of separate estate, consisting of approximately $6,000; that the deceased did not possess any estate, excepting an expectancy from the estate of one Jane Harmon, deceased; that, on the 11th day of September, 1891, six months after the marriage as above stated, a verbal contract was entered into between the plaintiff and the deceased by which each of them agreed to make, execute, and deliver to the other a last will and testament, devising to each other any and all property that either should have at the time of his or her death, and providing further that all the separate property of the parties should be used for the benefit of the community; that Enoch C. McClanahan, at that time, had three children by a former marriage; that wills were duly made which were exact duplicates, with the exception of the names and that, in the will of Enoch C. McClanahan, his children were mentioned and $10 given to each of them; that the wills were witnessed by the same persons, and provided for the appointment of the other as sole executor without bonds, and devised all of the property to the

survivor; that, while the plaintiff and Enoch C. McClanahan were living together, on or about September 1, 1894, the plaintiff received the sum of $800 from her separate estate, and delivered the same to her husband, which money was used by him in the payment of debts against his separate estate; that the contract was lived up to by both parties until four days prior to his death, when he made, executed, and published a will devising to the plaintiff only a life estate in the real estate, leaving the fee simple title thereof to his children. Copies of these wills are attached to the complaint.

After this complaint was served upon the defendants, who are the children of Enoch C. McClanahan by a former wife, two of these children appeared by their attorneys and filed an answer denying the material allegations of the complaint, and alleging, as an affirmative defense, the fact of the death of Enoch C. McClanahan and setting forth that he executed a last will on the 8th day of May, 1912, and that the same was made and published with the knowledge of the plaintiff, which fact was admitted by the reply. Thereupon the defendants filed a motion for judgment upon the pleadings, and for a dismissal of the action. The court granted this motion, on the ground that the plaintiff has a complete remedy in the probate court to determine the validity of the will of Enoch C. McClanahan dated September 11, 1891, and the will dated May 8, 1912; and, for that reason, dismissed the complaint, without prejudice to the rights of the parties to have determined the validity of either of the wills. The plaintiff has appealed from that order.

The appellant states that "the sole question to be determined upon the appeal is whether the contract that was made by the appellant and the decedent is such a contract as equity will specifically enforce, and whether or not the execution of a new will by the decedent prior to his death effectually invalidated the contract of the parties." No other question is presented or discussed in either the brief of the

appellant or the respondents. We shall therefore proceed at once to a determination of this question.

Two cases almost identical with this case have been presented to this court which we think are determinative of the question now presented. The case of *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796, was a case where Orley Hull made a parol agreement to the effect that, in consideration that Eva Swash and her sister would waive the right of an appeal in litigation which was then pending between Orley Hull and his daughters, the said Orley Hull would devise to Eva Swash one-fourth of his estate at the time of his death. Eva Swash consented to this, and waived the right of appeal. Afterwards her father died, leaving a will in which he bequeathed to her the sum of $500. The value of the estate at that time was $40,000 or more. In that case, after reviewing numerous authorities, this court said:

"The cases cited that do support the plaintiff's contention are overborne by the weight of authority, and the rule seems to be well settled that to enforce a parol contract to make a will there must have been at least some substantial thing done by the testator in his lifetime in pursuance of that contract. This seems to be required for the purpose of placing the proof of the contract beyond all legitimate controversy, and bears directly upon the question of the proof. The fraud to be prevented is the danger of the fraudulent establishment of such contracts, and this is the purpose of the provision of the statute; and the cases which hold that a performance upon the part of one party alone is sufficient seem to lose sight of this fact and assume that the contract can as well be established by the acts of one party alone, against the statute."

Further along in the case, at page 437, this court said:

"If the making of a previous will in pursuance of the contract would not have been a sufficient part performance by Hull, then the nature of this contract was such that it would not admit of a sufficient part performance to make it valid, for there was nothing else for him to do in the premises. Con-

ceding all that the plaintiff claims with reference to the proof, we are still forced to the conclusion, under the authorities, that she is not entitled to a decree for a specific performance, for we are not disposed to add to or extend the exceptions to the rule established by the statute to meet the seeming hardships of a particular case. The fault rests with the parties in not putting their contracts in writing. The rule should not be infringed as freely after the death of one of the parties as in cases where the contract was to be performed during his lifetime. If a period of years had been fixed by the contract for the conveyance of this property by Hull to the plaintiff, instead of a devise, and the parties were all living, under the overwhelming weight of authority there was not a sufficient part performance to authorize its specific enforcement."

This case, it seems to us, is a complete answer to the question presented upon this appeal. The case of *In re Edwall's Estate*, 75 Wash. 391, 134 Pac. 1041, was "in substance an action to enforce specific performance of an alleged contract entered into between Ida Edwall and her deceased husband, by which they agreed to make mutual wills, and in pursuance of which contract they each executed wills on July 3, 1909." Thereafter, on July 9, 1910, Peter Edwall executed another will, wherein he expressly revoked all former wills by him executed and devised his estate to Ward Jesseph, in trust, so that his wife would receive during her lifetime the larger portion of the income therefrom, upon her death his estate to be distributed among certain of his relatives, naming them. In that case we held that the oral agreement was within the statute of frauds, and was void, and that there was no part performance, and therefore affirmed the judgment of the lower court. The wills executed in the *Edwall* case are in all respects similar to the wills executed in this case, and the question presented in the *Edwall* case is the same as is presented in this case. After reviewing many authorities cited in the appellant's brief, and others not cited, we said:

"We are of the opinion that these wills do not, of themselves prove the making of any contract of mutuality on the

part of the testators, nor that one was made in consideration
of the other, though upon their face they appear to have been
simultaneously executed before the same witnesses and were,
as the evidence shows placed for safe keeping together in the
hands of a third person.   So far as any written evidence such
as is required by the statute of frauds shows, these are in-
dividual wills of the simplest possible character, and there is
no competent written evidence in this record tending to show
that they were made in pursuance of any contract between the
respective testators which would in the least impair their
power of revocation.   It follows that the making of the will
of July 9, 1910, by Peter Edwall constituted an effectual
revocation of his will of July 3, 1909, unless the effect of the
statute of frauds was avoided by part performance of the
alleged contract."

In that case we quoted from *Edson v. Parsons*, 155 N. Y.
555, 50 N. E. 265, as follows:

"A general maxim, which equity recognizes, is that a testa-
tor's will is ambulatory until his death.   It is a disposition of
property, which neither can, nor is supposed to, take effect
until after death.   I think it needs no further argument to
show that to attribute to a will the quality of irrevocability
demands the most indisputable evidence of the agreement,
which is relied upon to change its ambulatory nature, and that
the presumptions will not, and should not, take the place of
proof."

Then, in the *Edwall* case, after considering the claim of the
appellant that there had been a part performance of the con-
tract relied upon, we held that the making of a will in pur-
suance of a contract required by the statute of frauds to be
evidenced by a writing, did not constitute a part perform-
ance of such contract so as to render the same enforceable,
and concluded by saying:

"We are unable to find in this record any evidence in writ-
ing of the existence of a contract between appellant and the
deceased in pursuance of which the wills of July 3, 1909, were
made by them, and we are not permitted by law to look to
parol proof of the existence of such a contract, any more
than we are permitted to look to parol proof of the convey-

ance of land. It follows that each of those wills were revocable at the pleasure of its maker, without notice to the other, and that the one executed by Peter Edwall was effectively revoked by his will of July 9, 1910."

These cases seem to us to be directly in point upon the question presented here, and decisive of it.

The judgment appealed from is therefore affirmed.

CROW, C. J., PARKER, MORRIS, and FULLERTON, JJ., concur.