[No. 19607.  Department Two.  March 12, 1926.]

CHARLES FREDERICK et al., Appellants, v. A. M.
MICHAELSON, as Administrator etc.,
Respondent.[1]

[1] WILLS (8-1)—CONTRACTS TO DEVISE — EVIDENCE — SUFFICIENCY.
Under the rule that contracts to devise must be sustained by
testimony that is definite, certain, and beyond all legitimate
controversy, it is insufficient to prove conversations with, and
statements made by, the deceased, many years before his death,
that he intended to give his property to neighbors who, ten years
before, had taken care of him for several years while he was
sick.

Appeal from a judgment of the superior court for
Lincoln county, Lindsley, J., entered June 30, 1925,
upon findings in favor of defendants, in an action for
specific performance, tried to the court.  Affirmed.

*W. W. Zent, G. E. Lovell,* and *Joseph H. Johnston,*
for appellants.

*W. M. Nevins,* for respondent.

MACKINTOSH, J.—The appellants allege that, in 1913,
one Dittman orally agreed with them that he "would
give the said plaintiffs all the property which he had
in the United States of America."  They claim that
they had been neighbors of Dittman for several years,
that he had made his home with them, that they had
cooked for him, done his washing, taken care of him
while he was sick, and otherwise taken care of his
wants and requirements, all without compensation.  In
1913, Dittman returned to his native home in Germany,
and died there in 1919.  In 1925 this action was brought
to recover property of which he died possessed, ap-
proximately $5,000 in a bank at Odessa.

[1]Reported in 244 Pac. 119.

[1]   Actions of this character must be sustained by testimony which is conclusive, definite, certain, and beyond all legitimate controversy. *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796; *Anderson v. Osborn,* 62 Wash. 400, 114 Pac. 160; *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041; *McClanahan v. McClanahan,* 77 Wash. 138, 137 Pac. 479, Ann. Cas. 1915A 461; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Wall v. McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631.

In the last case cited, we said:

"  'Alleged oral contracts to devise property have become so frequent in recent years as to cause alarm and the courts have grown conservative as to the nature of the evidence required to establish them to the detriment and disinheriting of lawful heirs who otherwise would be entitled to the estate, and in enforcing them by specific performance when established.  'Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises,' said the New York Court of Appeals. 'They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents.'

"  'While such contracts are sometimes enforced by the courts, it is only when they have been established by evidence so strong and clear as to leave no doubt and when the result of enforcing them would not be inequitable or unjust.   .   .   .    Such contracts are dangerous.'   .   .   .

"The case of *Holmes v. Connable,* 111 Iowa 298, 82 N. W. 780, seems to us to be very much the same on the facts and to the point in law.  The court said:

"  'Before going into details, we wish, as already suggested, to say something as to the rules that should govern courts in passing upon cases of this kind.  It will not do, as plaintiff's counsel seem to think proper, to hold that because a certain number of witnesses have testified to the making of the contract, and none

have been called to deny it, plaintiff's case is established. The lips of the only two witnesses who could deny it are forever closed.' "

The testimony in this case is largely that of witnesses as to conversations with, and statements made by, the deceased many years ago, to the effect that he intended to give his property to the appellants. This kind of testimony is, by its very nature, of the weakest character known to the law. *Plath v. Mullins,* 87 Wash. 403, 151 Pac. 811; *Denny v. Holden,* 55 Wash. 22, 103 Pac. 1109; *Pilcher v. Lotzgesell,* 57 Wash. 471, 107 Pac. 340; Moore on Facts, §§ 103, 877, 887, 1150.

As the supreme court of Missouri said, in considering this question, in *Kinney v. Murray,* 170 Mo. 674, 71 S. W. 197:

"The evidence consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed himself, or the witness having misunderstood him. It frequently happens also that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. . . . When we reflect upon the inaccuracy of many witnesses in their original comprehension of a conversation, their extreme liability to mingle subsequent facts and occurrences with the original transaction, and the impossibility of recollecting the exact equivalents, we must conclude there is no substantial reliance upon this class of testimony. The intrinsic weakness of this class of evidence is further enhanced in any given case by the length of time that has intervened since the declarations were made and the ease with which it can be manufactured and the temptation to do so, when all those by whom it could be contradicted are in their graves. Such evidence can and ought to have very little weight when it is sought by it to asperse the memory or set aside the last wills and testaments of

worthy and just persons, executed in contemplation of death, and in the manner required by law disposing of their own property according to the dictates of their own consciences.''

In an article in 33 Harvard Law Review, p. 933, by Dean Pound, this statement is made by that learned authority regarding this question:

"No less than twenty-three cases during the past year turned on alleged oral contracts to leave property by will, or to adopt and leave property to the adopted person, as to a child. As one reads these cases he cannot but have an uneasy feeling that general expectations of becoming the object of a testator's bounty often ripen into a contract after testator's death.''

An examination of the testimony produced by the appellants falls far short of meeting the requirements above set forth, and forces the same conclusion as that reached by the trial court, that the appellants have failed to remove the cloud of suspicion which hangs over claims such as the one presented here. The judgment is therefore affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and PARKER, JJ.. concur.