[No. 19691. Department Two. March 29, 1926.]

HUGO W. EIDINGER, *Respondent,* v. GERTRUDE Z.
MAMLOCK, *Individually and as Executrix of the
Estate of Solomon Zelinsky, Deceased,
Appellant.*[1]

[1] WILLS (8)—CONTRACTS TO DEVISE—EVIDENCE—WEIGHT AND SUF-
FICIENCY. The evidence does not sustain findings that a father
agreed, in consideration of a deed from his children of their
interests as heirs of their mother, to will the property to them
in equal shares, where no witness testified that the father had
made any such agreement, the childrens' deed to him was in
consideration of love and appreciation and $10, suggesting a
gift, and it appeared that he made a will inconsistent with such
agreement, the only evidence to the contrary being a writing,
signed by the testator two years after the deed, wherein he
agreed to divide all his property equally between his children,
which manifestly was without consideration.

Appeal from a judgment of the superior court for
Pierce county, Teats, J., entered July 10, 1925, upon
findings in favor of the plaintiff, in an action for spe-
cific performance, tried to the court. Reversed.

*F. Campbell,* for appellant.

*Jesse Thomas,* for respondent.

PARKER, J.—The plaintiff, Hugo Eidinger, seeks as
against the defendant, his sister, Mrs. Gertrude Mam-
lock, personally and as executrix of their father's last
will and testament, relief in the nature of the specific
performance of an alleged oral agreement entered into
between them and their fathers, several years prior to
his death, by which he agreed to will all his property
so that they would upon his death receive it in equal
shares; the father having died leaving his last will,
devising the larger portion of his property to the de-
fendant Gertrude; that is, Hugo seeks a judgment

¹Reported in 244 Pac. 684.

awarding to him a one-half interest in all of the property left by the father as against the claim of Gertrude to the larger portion thereof, which she makes under the father's last will. Hugo also seeks a judgment awarding him a one-half interest in a certain house and lot, conveyed as a gift by the father to Gertrude after the making of the alleged will agreement. A trial upon the merits in the superior court for Pierce county resulted in findings and judgment awarding to Hugo relief as prayed for by him; the judgment, however, leaving the property subject to debts and expenses chargeable against the estate of the father in its administration. From this disposition of the case in the superior court, Gertrude has appealed to this court.

Hugo and Gertrude are brother and sister, and are the only children of Henrietta and Sol Zelinsky, both deceased. Hugo's surname was changed to Eidinger by a decree of court. Gertrude's maiden surname was changed to Mamlock by her marriage. The mother died intestate in November, 1916, leaving only her interest in community property of herself and the father; the total value of the whole of the community property being approximately $10,000. The father was duly appointed administrator of the community estate. When that estate was about ready for final settlement and distribution, the children being then of legal age, Hugo being then about 26 years of age, joined in the execution of a deed conveying and quitclaiming to the father all their interest in the property left by the mother, particularly describing the real property, the latter being nearly the whole of the property, in value, reciting as a consideration therefor "love and affection and the sum of $10, lawful money of the United States of America to us in hand paid." This deed was executed in duplicate for the purpose of filing the original

for record in the office of the county auditor and the duplicate in the probate proceedings, to the end that distribution of the whole of the community property be decreed to the father as his property, free from all claim of the children. Such a decree was accordingly rendered.

The alleged agreement by which the father was to will his property, so that at the time of his death it would all go in equal shares to the children, is claimed by Hugo to have been made at the time and in consideration of his and Gertrude's executing this deed. We shall presently notice the testimony touching what occurred at that time. Sometime thereafter just when the record does not show, the father made a will. That will does not appear to have been made according to the terms of the alleged will agreement. In March, 1920, the father conveyed to Gertrude a house and lot of the value of about $2,000 as a gift to her. This property was acquired by the father after the death of the mother. It seems to have been his separate property. Hugo has had possession, since August 1, 1920, of a wholly typewritten paper, other than the signature thereto, purporting to be signed by the father on that date, the whole of which reads as follows:

"I the undersigned promise this first day of August, 1920, to divide all my property equally between my son and my daughter after my death.
                    Signed "S. Zelinsky."

We shall assume that this paper was then signed and delivered to Hugo by the father. Gertrude never knew of the existence of this paper until after the father's death. On November 7, 1922, the father made his last will, appointing Gertrude executrix thereof, and leaving his property, subject to his debts, funeral expenses and administration expenses, as follows:

"Fourth, I give and bequeath unto my son, Hugo W. Zelinsky, of Tacoma, Washington, Five Hundred ($500.00) Dollars.

"Fifth, I give and bequeath to my daughter, Gertrude Zelinsky, of Tacoma, Washington, all the rest and residue of my property, real and personal, of which I may be possessed at the time of my decease."

This will, according to the testimony of a notary public, one Klindt, who drafted it for the father, is practically a copy of the first will which he then had before him, except "a couple of lots was willed to the boy" by the first will. We have no other evidence as to the provisions of the first will. Indeed, we have no other evidence touching the making of the first will. It was not produced in this case. So we have no proof of the first will being made in conformity to the alleged will agreement. Indeed, what little evidence we have seems to negative its being made, leaving the property in equal shares to Hugo and Gertrude. On November 16, 1922, the father died. Soon thereafter his last will was duly proven and admitted to probate in the superior court for Pierce county, Gertrude duly qualified as executrix thereof and proceeded with the administration of the estate of the father. Thereafter, when the estate was nearly ready for final settlement and distribution, Hugo commenced this action, the trial of which resulted in the judgment awarding to him relief as prayed for, and Gertrude's appeal therefrom, as we have already noticed.

There is no evidence whatever in this record of any talk or negotiations between either of the children and the father, looking to an agreement on his part to will his property in equal shares to them, prior to their making of the deed conveying their mother's interest in the property to the father in March, 1920. As to what occurred at the time of the making of that deed,

we have no evidence bearing directly thereon other than the testimony of Hugo and Gertrude. Hugo testified touching what then occurred, as follows:

"Q. Where was that [the deed] signed? A. Nelda Jaeger's office. [She was attorney for the father in the administration of the community estate.] Q. Who was present at that time when you signed that? A. Nelda Jaeger and Homer Bone. Q. Homer took your acknowledgement? A. Yes, sir. Q. Now, had you requested them to prepare such a document? A. No, sir. Q. Did you ever talk with her about it at all? A. No, sir. Q. How did you happen to drop into her office? A. She phoned me. . . . Q. Now, tell the court what transpired or was said between you with reference to your signing or acknowledging that deed when you stepped into her office. A. As near as I can remember, she said she had prepared it, I don't remember why, a deed or a conveyance, . . . She said I was to sign this document deeding everything to my father, that he would divide the property between us. . . . She told me to sign that paper on the proper line and that my father, no doubt, would do the right thing by me. . . . Q. Did she explain to you anything about the nature or character of this instrument? A. No, sir. Q. Did you read it? A. No, sir, I did not. Q. Did she say she had prepared it at your father's request? A. She did."

Gertrude testified touching what then occurred, as follows:

"Q. Were you present at the time this deed was executed? A. Yes, sir. Q. Where was it executed? A. In Nelda Jaeger's office. Q. Who was present? A. My father, Nelda Jaeger, my brother and myself. Q. You were all together at the time this deed was made? A. Yes, sir. Q. Did you ever hear or know about any claim made by your brother, the plaintiff in this action, that his father had ever agreed to give him one-half of his property at the time he died? A. No, sir. Mr. Campbell: Q. When, if at any time, did you ever hear of your brother's claim that he makes here in this com-

plaint? A. I never heard of anything until after my father died. Q. Until after your father died, how long after? A. As soon as he heard what was in the will. Q. That's the first time you ever heard him make any such claim? A. Yes, sir."

This is, in substance, the whole of the testimony touching directly the occurrences and conversation of that occasion. Of course, neither Hugo nor Gertrude could be allowed to testify as to what the father said. It is to be noticed in this connection, that there is not a word of testimony from anyone else as to the father saying anything. Neither Miss Jaeger, the attorney, nor Mr. Bone, the notary, who were then present, testified in this case. Hugo was himself the sole witness testifying in his behalf. Nor is there a bit of evidence in this record of the father ever saying a word, orally or in writing, evidencing his intent to make an agreement to make a will of any nature, other than as he may be considered as so promising by the writing signed by him on March 1, 1920, over two years after the alleged making of the agreement here relied upon and sought to be enforced by Hugo.

[1] It seems to us these facts clearly fall short of proving the existence of an agreement between the father and Hugo and Gertrude in January, 1918, at the time of their giving of the deed to him, by which he became under any legal obligation whatever to make a will, so that his property at the time of his death would go in equal shares to them. Recapitulating, we have these outstanding facts: (1) We have the deed of January, 1918, from the children to the father, in which is expressed a consideration of love and affection and $10 in money, the latter manifestly being intended as a mere nominal consideration, and the former manifestly being intended as the main consideration; thus the deed, within itself, strongly suggesting a gift, without

any expectation of further legal claim against the father. (2) We have the meager testimony of Hugo, given over seven years after the making of the will agreement, relative to his conversation with Miss Jaeger, in which conversation she goes no farther than saying, according to his testimony, "I was to sign this document deeding everything to my father, that he would divide the property between us;" and, "She told me to sign that paper on the proper line and that my father, no doubt, would do the right thing by me." And even this is negatived by the testimony of Gertrude. Of course, both Hugo and Gertrude were interested witnesses, but Hugo had the burden of proof. (3) We have the making of a will by the father, sometime after the alleged making of the will agreement, inconsistent in terms with such agreement, in so far as can be determined from this record. (4) We have the making of this last will by the father, wholly inconsistent with the making of the alleged will agreement. (5) We have the writing signed by the father on August 1, 1920, more than two years after the alleged making of the will agreement, by which writing he promised to "divide all my property equally between my son and daughter after my death." That writing may be of some evidentiary value as indicating his then intent, but manifestly was not an agreement, or any part of an agreement, alleged to have been made in 1918. Viewed as an agreement, it manifestly was without any supporting consideration. Neither Hugo nor Gertrude parted with anything as a consideration for that promise.

This court has recognized the validity and binding force of oral agreements to will property, when clearly proven and supported by sufficient consideration and sufficient part performance to avoid the restraining

effect of our statute of frauds, but we think no cases.
can be found in the decisions of this court, and we
doubt if they can be found elsewhere, sustaining a con-
tention of the making of such an agreement by no
greater showing as to its making than is presented in
this case. The dangers incident to the establishment
of the existence of such an oral agreement has been
emphasized by this court, and the necessity of proof of
the most convincing nature to establish such an agree-
ment has been repeatedly held by this court. Among
our own decisions holding to this view of the law the
following are worthy of special notice in our present
inquiry: *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac.
862, 32 L. R. A. 796; *In re Edwall's Estate,* 75 Wash.
391, 134 Pac. 1041; *McClanahan v. McClanahan,* 77
Wash. 138, 137 Pac. 479, Ann. Cas. 1915A 461; *Wall v.
McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631;
*Fields v. Fields,* 137 Wash. 592, 243 Pac. 369; *Frederick
v. Michaelson,* ante p. 55, 244 Pac. 119.

Further, we have the presumption of gift arising
from the expression in the deed of conveyance of
March, 1918, made by Hugo and Gertrude to the father
as being made in consideration of love and affection.
8 R. C. L. 964. We are not here trying to argue that
this deed was a gift in a technical, legal sense, though
there seems to be ground for so arguing, but are notic-
ing this presumption of gift from the expression of a
consideration of "love and affection," as strong evi-
dence pointing to the fact that the deed was not given
by Hugo and Gertrude to the father in consideration
of a promise made by him to will his property, so that
at his death it would go in equal shares to them.

We conclude that the alleged agreement by the
father to make a will, as claimed by Hugo, has not
been proven with that degree of certainty required by

the law to establish the making of such an agreement. The judgment is reversed, and the cause remanded to the superior court with directions that it be dismissed with prejudice as against the respondent, Hugo W. Eidinger.

TOLMAN, C. J., MITCHELL, MAIN, and MACKINTOSH, JJ., concur.