[No. 21973.   Department Two.   December 17, 1929.]

*In the Matter of the Estate of* LYDIA C. GULSTINE,
*Deceased.*

S. D. WINGATE *et al., Respondents,* v. EDNA M.
GULSTINE *et al., Appellants.*[1]

*S. A. Keenan* and *Griffin & Griffin,* for appellants.

*Wingate & Benz* and *C. G. Nordquist,* for respondents.

HOLCOMB, J.—Henry H. Gulstine executed his last will on October 11, 1927, and died on October 18, 1927. His will contained the following provisions:

"(a)   To my daughters, Berna Claudine Damman and Josephine Amanda Leigh, I devise and bequeath the sum of two thousand dollars ($2,000) to each of them, and no more, payable out of my life insurance.

"(b)   My wife and I having already conveyed to my daughter, Henrietta Marie Gulstine, our home situate on lot fifteen (15) in block five (5) Denny Fuhrman's addition to the city of Seattle, Washington; I

[1]Reported in 282 Pac. 920.

devise and bequeath to her in addition thereto the sum of two thousand dollars ($2,000), and no more.

"(c) My son, Morris Vernon Gulstine, having assisted me in developing our fruit ranch near Zillah, county of Yakima, Washington, and bringing it to its present efficiency and value, I deem it just and equitable, that he should have for his share an undivided one-fourth interest in said fruit ranch, and I hereby devise and bequeath unto him an undivided one-fourth interest in said fruit ranch as his share in my estate.

"(d) My son, Herman Philander Gulstine, of Madison, South Dakota, having accumulated ample means of his own, I devise and bequeath to him the sum of five dollars ($5), and no more.

"(e) The residue and the balance remaining of my estate I devise and bequeath, share and share alike, unto my daughters, Edna Mable Gulstine, May Pearl Gulstine, Eunice Marjorie Gulstine, and my sons, Henry Leonard Gulstine and Leland Stanford Gulstine, and my beloved wife, Lydia C. Gulstine."

Henrietta M. Gulstine, his daughter, and Morris Vernon Gulstine, a son, qualified as executors under the last will of the deceased. He had been married before, and upon the death of his first wife in 1896, leaving six children, about two years thereafter he married Lydia C. Schmidt, by whom he had four children.

On November 15, 1927, Lydia C. Gulstine also executed a last will which contained the following provisions:

"(a) To my step-daughter, Henrietta Marie Gulstine, I devise and bequeath the home now occupied by me and my family and described as follows: Lot fifteen (15) in block five (5), Denny Fuhrman's Addition to the city of Seattle, Washington.

"(b) My son, Morris Vernon Gulstine, having assisted his father in developing our fruit ranch near Zillah, county of Yakima, Washington, and bringing it to its present efficiency and value, I deem it just and equitable, that he should have for his share an undi-

vided one-fourth interest in said fruit ranch, and I hereby devise and bequeath unto him an undivided one-fourth interest of my community interest in said fruit ranch, as his share in my estate.

"(c) To my step-son, Herman Philander Gulstine, Madison, South Dakota, and my step-daughters, Berna Claudine Damman and Josephine Amanda Leigh, I give and bequeath the sum of five dollars ($5) each, and no more.

"(d) The residue and the balance remaining of my estate, I devise and bequeath, share and share alike, unto my step-daughters, Edna Mabel Gulstine and Pearl Gulstine; and to my daughter, Eunice Marjorie Gulstine, and my sons, Henry Leonard Gulstine and Leland Stanford Gulstine."

Mrs. Gulstine had been ill of tuberculosis of the lungs for about two years prior to her husband's death. She had been for some time in a tuberculosis sanitarium at the time of his death in a hospital where he had undergone an operation. In March, 1928, she went to Okanogan in the hope of physical improvement, where she remained until October 6, 1928, when she returned to Seattle and, upon her arrival, was taken from the train to the nearest hotel. There, on October 10, 1928, in the presence of her son Morris, her sister Esther E. Schmidt, S. D. Wingate and C. G. Nordquist, she executed another will. At that time she had suffered a partial stroke of paralysis which paralyzed her organs of speech so that she could not talk at any length, being able to say but a few words at a time. That will was only partly signed by her hand, she signing the words "Lydia C." and, being unable from some cause to sign the remainder of her name, the rest of her name was then made by a mark in the presence of the witnesses. It appears from the testimony of the witnesses that the last will, although it is attested as being signed and executed on October 6, 1928, was in fact not signed until October 10, 1928. The two witnesses who at-

tested that will and two other persons above mentioned all testified to her mental competency. The Rev. Dr. James W. Crowther, her pastor for the preceding five years, also visited her in her room in the hotel during that illness, and observed that she was mentally alert and competent, although physically disabled. A nerve specialist of Seattle also examined her upon her arrival at the hotel, and testified as to her competency. Two other physicians in Seattle, one of whom was her family physician, testified that she was not mentally competent at the time they examined her, but her family physician made no examination as to her mentality. The other physician gave only qualified testimony as to what her mental condition might have been.

Mrs. Gulstine died on November 27, 1928. Both the will of November, 1927, and that of October, 1928, were offered for probate in the court below, and the trial court, after hearing all the testimony in support of each one, held that the last will of October, 1928, was made without undue influence on the part of anyone and while the testatrix was mentally competent to make a will.

This case involves chiefly questions of fact. The trial court, having seen all the witnesses and examined all the written evidence, was in a better situation to judge of the credibility of the witnesses than are we. *In re Murphy's Estate*, 98 Wash. 548, 168 Pac. 175.

A careful reading of the testimony and written evidence in the entire statement of facts impels us to the conclusion that there is no preponderance of testimony contrary to the finding of the trial court as to the competency of the testatrix at the time the will of October, 1928, was executed.

As to any undue influence exercised by anyone, the evidence discloses that Mrs. Gulstine, after the death of her husband and during the probate of his

estate, became, apparently, rather unjustifiably dissatisfied with the manner in which that probate was being conducted. While she was unable to take any active part in affairs on account of her physical disability, she was extremely alert to her interests. She considered that, because she owned a one-half community interest in everything, she should be consulted at all times, and that she should be allowed to make checks against the community estate for her own and her minor children's necessary expenses. She demanded itemized and detailed reports concerning the condition of the probate, which were given her, but she was not satisfied, and took the matter up with her brother, Ben Schmidt, who visited her once in June, 1928, and with whom she talked, by long distance telephone, twice between that date and the date when he left San Francisco for China in October, 1928. Most of her complaints were made by letter either to her brother or to Mr. Wingate, who was consulted by her brother and by her son Morris. Mr. Wingate advised her that the probate was being conducted legally and that the executors and their attorney, Mr. Keenan, were cooperating fully with him. All the correspondence has been read.

There is nothing in the evidence to show sufficient propinquity and contact between Mrs. Gulstine and her brother, or between her and Mr. Wingate to show the slightest undue influence on the part of either. As to any other person, there is no more than suspicion.

Our conclusion is that there was neither undue influence nor mental incompetency sufficient to invalidate the will of October, 1928, shown. See, *In re Roy's Estate,* 113 Wash. 277, 193 Pac. 682.

An earnest contention and an impressive argument is made by appellants that the two wills, that of Mr. Gulstine and that of Mrs. Gulstine, on Novem-

ber 15, 1927, were mutual wills, made, in pursuance of a mutual agreement that such wills should be made by each, at and shortly before the time of the execution of Mr. Gulstine's will, and a like agreement going back as far as 1921, when both made wills of similar reciprocal nature. In all of the earlier wills of both, special recognition of the services of the son of both, Morris, and of Henrietta, his daughter by the former marriage, was made. New wills having been considered advisable because of the disposition of certain Seattle property, the wills of October and November, 1927, were prepared by Mr. Keenan. The Seattle residence property having then just been jointly conveyed to Henrietta, it was so stated in Mr. Gulstine's will and no devise made of it, and she was bequeathed $2,000 in money out of his estate. In Mrs. Gulstine's will of November, 1927, that real property was devised to Henrietta and no other money bequest made to her. The dispositions of the residuary estates of both, as shown by comparison of the residuary clauses of the two wills made in 1927, were not the same. However, appellants contend that the chief purpose of both was to provide justly and adequately by both of their last wills for his daughter, her step-daughter, Henrietta, the son of both, Morris, and a daughter of his who was somewhat subnormal, mentally, her step-daughter, May Pearl. It was shown at the trial that Mr. Gulstine had made declarations before his death to the effect that he and his wife had agreed upon the disposition of the property in the way that had been made in his will. There is evidence of any such declarations on the part of Mrs. Gulstine only by the facts that she executed such a will in November, 1927, and told Mr. Keenan that that will (with some slight amendments which were made) was according to her understanding.

Appellants insist that the foregoing facts and circumstances establish the mutuality of the wills executed in October and November, 1927, and that the case is governed by *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255. In that case the court sustained the validity of mutual wills as to community property and refused to permit the widow, after the death of the other spouse, to renounce a mutual will made by her before her husband's death, with provisions reciprocal with those in his will, both having had legal advice that such mutual wills, rather than contracts and conveyances, were advisable. There, all the circumstances and documents "clearly and definitely established" the mutuality of the wills.

But there is no absolute rule of law which impresses upon wills, similar in their cross provisions, that mutual character by force of which the survivor's estate comes under a trust obligation. An oral agreement in pursuance of which a husband and wife executed mutual wills devising their real estate to each other, and providing that such wills should be irrevocable except by mutual agreement or on notice, is within the statute of frauds and void. In such a case, the mutual wills, although executed simultaneously, are not sufficient to take the case out of the statute of frauds where there was no reference in either will to any such contract. *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041. Such was the case here.

See, also, *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862; 32 L. R. A. 796; *McClanahan v. McClanahan,* 77 Wash. 138, 137 Pac. 479, Ann. Cas. 1915A 461; *Wall v. McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631; *In re Weir's Estate,* 134 Wash. 560, 236 Pac. 285; *Frederick v. Michaelson,* 138 Wash. 55, 244 Pac. 119; *Eidinger v. Mamlock,* 138 Wash. 276, 244 Pac. 684.

There is nothing to the contrary in the decision upon the facts respecting the validity of the last of four wills made by the testatrix in *In re Jeffs' Estate,* 73 Wash. 212, 131 Pac. 847.

We conclude that the judgment of the trial court must be, and it is, affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and FRENCH, JJ., concur.