[No. 25032. Department One. July 11, 1934.]

ALMIRA L. CLARK, *Respondent*, v. R. CRIST, *as Administrator, et al., Appellants.*[1]

---

[1]Reported in 34 P. (2d) 360.

*Newman H. Clark, William H. Pemberton*, and *John M. Boyle, Jr.*, for appellants.

*Revelle, Revelle & Kells*, for respondent.

STEINERT, J.—This action was brought to compel the specific performance of an oral contract alleged to have been made by respondent with a person now deceased. The complaint alleged that the parties to the contract agreed to associate themselves together as companions, and, as such, to enter into business and to travel and live together until death; the complaint further alleged that the parties agreed to merge their properties into a common ownership during their joint lives and to execute mutual wills under which the entire property remaining at the death of either should go to the survivor. The prayer of the complaint was that a trust be imposed upon the estate of the decedent for the benefit of the respondent. The answer was a general denial of the allegations of the complaint. From a decree granting the relief prayed for, the administrator of the estate of the decedent and also the state of Washington, through its inheritance tax and escheat division, have appealed.

Errors are assigned upon the findings, conclusions and decree of the court. The principal question, and the only one that we shall discuss, is whether the evidence was sufficient to establish the contract as alleged by the respondent and as found by the court. That question must be considered in the light of the well-established rule in this state that, in cases of this kind, the evidence must be conclusive, definite, certain and beyond all legitimate controversy. *Frederick v. Michaelson*, 138 Wash. 55, 244 Pac. 119; *Eidinger v. Mamlock*, 138 Wash. 276, 244 Pac. 684; *Sweetser v. Palmer*, 147 Wash. 686, 267 Pac. 432; *McCullough v. McCullough*, 153 Wash. 625, 280 Pac. 70; *Whitaker v.*

*Titus,* 166 Wash. 225, 6 P. (2d) 649; *Lohse v. Spokane & Eastern Trust Co.,* 170 Wash. 46, 15 P. (2d) 271.

Margaret I. Phillips, the decedent herein, formerly lived with her husband in Wenatchee, Washington. Mr. Phillips died in 1928, leaving Mrs. Phillips property of the value of eight or ten thousand dollars. Most of the property was real estate. Mrs. Phillips, then about seventy years of age and afflicted with heart trouble, sold the real estate, except one piece, and in the latter part of 1929 took up her residence in an apartment house in Seattle. The proceeds of the real estate which she had sold appears to have been invested by her in stock, which, together with similar stock inherited by her from her sister, was originally worth about eighty-five hundred dollars, but at the time involved in this action was worth only about one thousand dollars.

At the apartment house where Mrs. Phillips resided there also lived, during the latter part of 1929 and the early part of 1930, the respondent and her husband. The two ladies became acquainted with each other at the apartment house and their acquaintanceship appears to have ripened into a warm friendship, although Mrs. Clark was about fifteen years younger than Mrs. Phillips. Mr. and Mrs. Clark moved away from the apartment house in the spring of 1930, and sometime thereafter Mr. Clark took sick and, after a lingering illness, died on August 13, 1930.

The only property that Mrs. Clark seems to have had was a little furniture, sufficient to furnish two rooms. Having no other means, she was compelled to work for her living as a hotel maid. The friendship between the two ladies continued and grew. Being alone, they often visited each other, attended church together, and frequently exchanged dinner invitations. In her visitations, Mrs. Clark performed many little courtesies for Mrs. Phillips, such as one friend might

naturally extend to another of Mrs. Phillips' age and affliction. Appreciative of these courtesies, Mrs. Phillips seems to have made frequent reference to them in the presence of several people who later became witnesses in this case. The friendship between the two ladies lasted until Mrs. Phillips suddenly died in December, 1930.

On January 13, 1931, appellant Crist was appointed administrator of Mrs. Phillips' estate, which then consisted of the stock above mentioned, about two hundred dollars cash, and a piece of barren land in Grant county of doubtful and undetermined value. During her lifetime, Mrs. Phillips had mentioned in a casual way that she had cousins somewhere, but never particularly identified them. The administrator being unable to locate any heirs, the state of Washington claimed the estate by escheat. In April, 1932, which was more than fifteen months after Mrs. Phillips' death, respondent began this action against the administrator, seeking to enforce the contract which she claimed had been made on September 2, 1930.

To establish the alleged contract, the respondent called nine witnesses, practically all of whom were her personal friends. Of these, four merely testified that they had met Mrs. Phillips on one or two occasions and had heard her say that she appreciated the little things that Mrs. Clark had done for her, that she intended to repay her for them, and that the two were planning on living together. Another witness, the proprietress of the apartment house where Mrs. Phillips lived, was also called, and testified to some details considered favorable to the respondent, but her testimony, on the whole, was more favorable to the defense. The appellant Crist was called by the respondent merely to testify as to the amount of the estate. The respondent, under the limitations of the statute, testified to nothing

that was of any material importance in the case. Only two witnesses gave any testimony relative to the purported agreement. One was the respondent's brother; the other was a lady friend who had known the Clarks for about three years and from whom the latter had at one time rented a furnished cottage.

The brother testified that he first met Mrs. Phillips through Mrs. Clark, on November 2, 1930. His story was to the effect that, on that day, he and his sister had called on Mrs. Phillips at her apartment, and that, during their conversation, Mrs. Phillips had told him how kind Mrs. Clark had been to her, and that, in return for her kindness, she intended to take care of Mrs. Clark. He further testified that Mrs. Phillips then also told him that she had eight or ten thousand dollars in money, and that it had been previously agreed between her and Mrs. Clark, on September 2, 1930, that she, Mrs. Phillips, was to use her money to buy a hotel or apartment house which Mrs. Clark was to operate, that she and Mrs. Clark were to put all their possessions together and hold them jointly, the whole of them to go to the survivor, and that each was to make a will leaving all of her property to the other.

He also testified that, on November 22, 1930, Mrs. Phillips called a meeting at which were present, besides himself, Mrs. Phillips, Mrs. Clark and another lady, and that, in the conversation between them, Mrs. Phillips had reiterated her former statements, and had further said that she and Mrs. Clark had decided to purchase the Stewart Hotel, for which Mrs. Phillips was to pay seven thousand dollars in cash. Continuing his testimony, he stated that Mrs. Phillips then said that she had called the meeting in order that she might declare, in the presence of witnesses, her desire to fix up everything in such a way that, in case anything happened to her, Mrs. Clark would get her prop-

erty, that she and Mrs. Clark had already agreed to put their properties together and hold them jointly, the survivor to take what was remaining after the death of the other, and that each was to make a will in conformity with their agreement; that she then further stated that Mrs. Clark had previously made a will in her favor, and that, in a few days, she would go to Wenatchee and have her own will made in Mrs. Clark's favor.

He testified that, at the conclusion of Mrs. Phillips' statement, she asked Mrs. Clark whether her declarations were agreeable to her, and that Mrs. Clark had expressed her assent. The same witness further testified that Mrs. Clark had actually made her will as she had agreed, and that he had personally seen it. On cross-examination, however, the witness admitted that he did not know whether Mrs. Clark had made her will or not; he further admitted, on cross-examination, that, according to Mrs. Phillips' statements, the plan for mutual companionship was dependent on their securing a hotel or apartment house.

The corroborating witness testified that, on September 15, 1930, Mrs. Clark had brought Mrs. Phillips out to visit the witness at her home in West Seattle; that, during the conversation, Mrs. Phillips had expressed her regard for Mrs. Clark, and had said that she and Mrs. Clark wanted to live together just as soon as they could arrange their affairs, that they had, in fact, already agreed to put their belongings together and that, at her death, she wanted Mrs. Clark to have all of the property; that she further stated that they were planning on buying some apartment house or hotel, preferably the Stewart Hotel, but had not yet made any definite decision in that respect. She further testified that, as her visitors were leaving, some reference was made to the Kenney home, which was located nearby,

and that Mrs. Clark asked Mrs. Phillips whether she would not like to live there, to which Mrs. Phillips replied: "You know I don't want to live there. I'm going to live with you."

The witness proceeded with testimony to the effect that, on November 29th, she met Mrs. Phillips and Mrs. Clark at the Stewart Hotel, where the three, together with respondent's brother, made an appraisal of the hotel furnishings, and that, during the conversation, Mrs. Phillips stated that she and Mrs. Clark had agreed to buy the hotel, also that she was going to Wenatchee in a few days, where she would make her will leaving everything to Mrs. Clark, and that Mrs. Clark had already made her will as agreed. The witness further testified that, some days later, Mrs. Phillips called her on the telephone and stated that she had been in Wenatchee, but had not made her will because the lawyer to whom she had gone charged too much for the service. This was all the testimony tending to support the purported agreement.

On the other hand, the testimony of several witnesses for the appellants tended to prove that there was no such agreement. These witnesses appear to have been as well acquainted with Mrs. Phillips as Mrs. Clark was, and better acquainted with her than were any of respondent's witnesses. They all testified that, although they had talked with her many times, Mrs. Phillips had never indicated that she intended to give Mrs. Clark anything, by will or otherwise. Their testimony was also to the effect that Mrs. Phillips was not the kind of woman to discuss her affairs with others, particularly with strangers, and further, that she never gave any indication whatever of desiring to go into business; that she was content to live quietly on the means that she had and enjoy life as best she could alone.

We do not believe that respondent's evidence measures up to the test required by the rule in such cases. It is extremely improbable that Mrs. Phillips would have been willing to risk her all, whether ten thousand dollars or one thousand dollars, in a common ownership in which the other party would put relatively little. It is just as improbable that a woman of her age and physical condition would care to invest all of her money in a business as uncertain and precarious as a hotel or apartment house business often is. The evidence fails to show that the negotiations for the purchase of the Stewart Hotel, if there ever were any, were ever completed. The owners of the hotel could have furnished rather convincing evidence as to whether there had been such negotiations, but they were not called by respondent, nor was the failure to call them explained.

Although it was attempted to be shown that Mrs. Clark had made her will in favor of Mrs. Phillips, the attempt failed utterly. Mrs. Clark did not testify to the making of her will, nor was the draftsman or any of the subscribing witnesses produced at the trial. Their absence is unexplained. Admittedly, Mrs. Phillips never had her will drawn. If, as the story goes, she called on an attorney in Wenatchee for that purpose, a fair inquiry would no doubt have corroborated the story, if true. Whether any inquiry was ever made in that direction, the record does not disclose. While proof of negotiations relative to the purchase of the hotel or of the execution of a will by Mrs. Clark or of the visit to an attorney by Mrs. Phillips might not have been conclusive proof of the purported agreement, the absence of proof in those respects renders the likelihood of such agreement even less certain.

According to respondent's contention, the parties agreed, on September 2, 1930, that they would live

together, yet there is no proof as to when the association would begin, except when, and if, a hotel or apartment house was secured. It is admitted that the parties never did live together. According to the same contention, Mrs. Clark was to turn in her furniture, but it is conceded that this was not to be done until an apartment house had been secured. This, of course, was never done, and Mrs. Clark's furniture admittedly remained in storage, where it had previously been. The testimony of respondent's brother was conflicting in matters that bore on the existence of the contract. The testimony of the corroborating witness indicates that, on September 15th, there was still a question, even in Mrs. Clark's mind, whether the two ladies were to live together, for at that time Mrs. Clark suggested that Mrs. Phillips should go to live in the Kenney home.

This action was begun more than fifteen months after the death of Mrs. Phillips, and after it appeared that the estate would escheat. The trial was not had until more than a year later, and two years and a half after the purported conversations had taken place. Manifestly, it would be difficult after such a length of time to recall exactly what statements had been made or just who had supplied the portions favorable to respondent. Evidence consisting simply of a repetition of oral statements made a long time prior, is necessarily subject to much imperfection and mistake. Recollection easily lends itself to suggestion, even though the witness may be entirely honest. One is too apt to give his or her own impressions rather than the exact details which it may be necessary to prove in order to have a binding effect on the parties concerned. Added to all this is the fact that the opposing party, or his successor in interest, is almost powerless to disprove repeated conversations. Such evidence, it has been

said, is considered to be of the weakest character known to the law. *Frederick v. Michaelson,* 138 Wash. 55, 244 Pac. 119.

In our opinion, the evidence in this case is not conclusive, definite, certain and beyond legitimate controversy, as the rule in such cases requires. The judgment of the trial court is reversed, with direction to dismiss the action.

BEALS, C. J., MAIN, MITCHELL, and BLAKE, JJ., concur.

