[No. 19745. Department Two.    March 29, 1926.]

WILLIAM J. HENRY, *individually, et al., Appellants,* v. SOPHIA E. HENRY, *as Executrix of the last will and testament of James Henry, Deceased, et al., Respondent.*[1]

[1] WILLS (8)—CONTRACTS TO DEVISE—EVIDENCE—SUFFICIENCY. The evidence to sustain an oral promise to make a will must be conclusive, definite, and certain and establish all the elements of the contract beyond all reasonable doubt; and isolated indefinite statements made by a husband to leave all his community property to a nephew working for him on a salary, are not sufficient, in view of his situation and the interests of testator's wife and of an inconsistent will making another provision for the nephew.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 24, 1925, upon findings in favor of the defendant, in an action for specific performance, tried to the court. Affirmed.

*Kerr, McCord & Ivey, Ryan & Desmond,* and *C. R. Hovey,* for appellants.

*Murphy & Kumm, Peters & Powell,* and *Bausman, Oldham & Eggerman,* for respondents.

MACKINTOSH, J.— In 1892 James Henry and Sophia E. Henry were married. At that time they lived in this state, and they continued to live together here

[1]Reported in 244 Pac. 686.

until James Henry died in February, 1924. In 1908 the community was the owner of a substantial meat packing business in Seattle, consisting of real and personal property. So far as the record discloses, this, if not all, at least was essentially all, of the property belonging to the community at that time. The appellant William J. Henry was James Henry's nephew, and, according to the complaint, it was his intention to become a civil engineer. According to his story, his uncle discouraged him in this course and orally promised him, if he would give up his proposed career, and devote his time to the meat packing business and an effort to build up and promote his uncle's business, that, when the uncle died, the meat packing business should be the property of the nephew, and that this promise was made in the spring of 1908. The allegation is that the nephew accepted the proposition and started upon the performance of his services, and so continued thereafter until the uncle's death. During all this time he was paid a regular salary, which was the same as that which another performing similar services would have received.

The business prospered and, at the time of the uncle's death, the property was of the value of approximately $200,000. The uncle died leaving a will, in which he made a legacy in favor of his nephew in the sum of $2,000, which the nephew refused to accept, and instituted this action on the alleged oral contract, seeking to obtain possession of the meat packing plant. This oral contract, if it was made, was at the time it was made a promise by a husband during coverture and without knowledge of his wife, who testifies that she never, up to the time of her husband's death, had any information as to the existence of such a contract to dispose of the community property. It is strongly

urged that such a contract under no circumstances. could be enforced, for the reason that the husband was powerless to make this disposition of community property, it being owned by the community as an entity, and that neither spouse could by contract sever his interest in it, nor could he encumber or contract away the other spouse's interest.

Without entering into a discussion of this objection to the appellants' claim, and without passing upon its merit, we are better satisfied to determine this action upon the facts, which to our mind do not meet up to that standard required to establish an oral contract to convey property at death. With recurring frequency this court is being called on to establish claims such as the one presented here, which are in effect the assertion of oral wills. It is useless to repeat what has been so often said in this character of cases, that the courts look upon such claims with suspicious eyes. The evasion of the statutory requirements that some evidence of such an agreement should be in writing, is. not to be easily tolerated. Even a slight experience justifies the conclusion that the overwhelming majority of such claims are founded upon no greater basis than a desire to acquire property which was never intended to be so disposed. The evidence, to sustain such oral promises, we have said, must be conclusive, definite, certain and beyond all legitimate controversy. *Frederick v. Michaelson, ante* p. 55, 244 Pac. 119; *Eidinger v. Mamlock, ante* p. 276, 244 Pac. 684; *Fields v. Fields,* 137 Wash. 592, 243 Pac. 369. We are prepared to make, and are justified in making, a statement even more stringent than that, and to hold that one seeking to establish an oral contract, whereby property of the deceased is sought to be taken, must establish all the elements of the contract and a right to have it

enforced beyond all reasonable doubt. Without such a rule, no estate of any considerable size is safe from claims that it has been devised and bequeathed by word of mouth.

A careful investigation of the testimony in this case introduced and the statement of facts, comprising 1100 pages, does not produce in our mind any abiding conviction that the contract as claimed was in fact made. There is no benefit in an attempt to detail the testimony for and against the appellants' assertion. To attempt to analyze the testimony in a written opinion would do no more than to digest the story told by the witnesses and to finally conclude therefrom that the presumptions against the deceased having made such a contract have not been overcome. The fact that he and his wife lived for a great many years together in peace and harmony and confidence after the making of the alleged contract, without her ever having been told of it, the fact that, at the time it was alleged to have been made, there was no assurance that the business would ever grow into what it ultimately became, and that at that time a frugal, careful man was agreeing to divest himself and his wife of all their property at his death, the fact that in the will provision was made for the appellant in addition to what he claims he was to receive under the contract, the fact that throughout the appellant's service he received customary and ample remuneration,—these and other facts cannot be suppressed and overcome by testimony of witnesses as to random, isolated, indefinite statements to acquaintances or strangers, and sometimes business rivals, nor by more positive statements of the immediate family of the appellant whose interest it is not necessary to comment upon.

In view of our conclusions as to the facts, it is un-

necessary to discuss the further point raised, that the part performance relied on by the appellant is not sufficient, in any event, to take the contract, if it had been made, out of the statute of frauds.

For the reasons given, the judgment of the trial court is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and PARKER, JJ., concur.