[No. 22518. Department Two. September 22, 1930.]

ANTONIA AVENETTI, *Respondent*, v. HARRY L. BROWN, *as Administrator, et al., Appellants.*[1]

*F. A. Kern,* for appellants.

*E. E. Wager,* for respondent.

HOLCOMB, J.—This action was brought by respondent to compel the specific performance of a contract made by her deceased brother, Frederick Amosso, to devise all of his property to her upon his death, in consideration of previous benefits received by him and subsequent care and services to be given him.

After a trial on the merits by the court without a jury, the relief prayed by respondent was granted and the property of the deceased vested in her. From that decree, this appeal is taken.

[1] Reported in 291 Pac. 469.

The evidence is entirely oral. Respondent claims that services were rendered decedent after the making of the contract by the payment of his lodge dues; by the reservation in her home of a room for him which was habitually used by him; by nursing and caring for him in sickness after the contract was made; by cooking and taking food to him at his ranch and having her bachelor son work for him; and by nursing him in his last illness. The contract alleged by respondent was that, in August, 1926, it was agreed between them:

"That, in consideration of her kindness and care in the past, and upon her agreement to care for him in the future when he needed it, or when he became disabled, he would leave all his property to her."

This contract was proven by the bachelor son of respondent, who resided with her, as having been made in respondent's house in Roslyn in August, 1926. Respondent, being disqualified under the statute, did not attempt to testify to the contract.

In addition to the evidence as to the precise contract, the testimony is fairly overwhelming, by disinterested witnesses who were fellow-countrymen, friends and neighors of decedent, that he intended to make such disposition of his property. Subsequently, there were repeated declarations made by decedent to some of the witnesses that, because of the care he had theretofore received and would receive from respondent, he intended to give her all his property. There was testimony, within a month or two before his death, that he desired a neighbor and friend to go to town with him so that he could make his will, giving all his property to respondent.

Decedent had been sickly and ailing for eight or nine years before his death. Six or eight years prior to his death, he had an operation, after which he never

seemed to regain his strength. It seems that he went to the hospital in Seattle the second time in July, 1926, and, after returning from the hospital, remained at the house of respondent in Roslyn for two months. It was at that time that he made the alleged contract. Afterwards, whenever ill and at any other time he desired, he went to respondent's home in Roslyn, where a bed was reserved for him, and where he kept his best clothes. Although some of appellants always lived on the adjoining tract and in the adjoining house, they seemed not to like to associate much with him, nor he with them.

The property of decedent consisted of eighty acres of farming land in what is called the Teanaway, a small valley in Kittitas county situated, by road, from sixteen to twenty miles from Roslyn. Decedent never married. He and another brother, Frank, who was married, lived together upon a tract of 160 acres of government land as a homestead, and obtained title from the government. Each had an undivided interest in the land until the death of Frank in 1923. After that, decedent lived only a few months with the widow and family of his deceased brother, when the house was divided, the land divided, and he lived alone on the eighty acres he had always farmed, and which he received, until he died in February, 1928. He left, surviving him, respondent, who is a sister and next of kin. He also left, surviving him, a large number of nephews and nieces, most of them the children of the deceased brother Frank, who are appellants in this action.

Immediately upon decedent becoming ill in February, 1928, word was sent to respondent, and, at the instance of respondent, her husband, her son and son-in-law immediately went to the home of decedent and brought him to her home in Roslyn the next forenoon.

He died about four days after being brought to the home of respondent. There is also ample, competent evidence, both interested and disinterested, that, after August, 1926, when decedent became ill, he relied upon his sister and her family both for attention and care and for necessary labor upon his farm. At one time, respondent and her bachelor son went to the farm of decedent during hay harvest, and attended to the harvest, the son procuring what labor was necessary in addition to his own, and respondent doing the cooking for eleven days. All the other considerations relied upon by respondent were amply proven.

Appellants contend that parol contracts such as relied upon in this case are not enforceable. This contention is untenable. *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Herren v. Herren,* 118 Wash. 56, 203 Pac. 34.

Appellants further contend that the alleged contract was not established by proof of the most convincing nature so as to be definite, certain and beyond all legitimate controversy.

As was said in the *Herren* case, *supra,* an oral contract to convey lands may be shown, if the whole evidence is sufficient in the case, so that the contract can be determined with reasonable certainty; and, as was said in the *Alexander* case, *supra,* the proofs required, whether the contract rests in parol or is evidenced in writing, go not so much to the terms of the contract as to the intent of the testator. Here the terms of the contract were positively proven by a witness who was at least only indirectly interested. The intent of the promisor was so overwhelmingly proven by statements to others as to his intent that it may be said to be almost conclusively established.

In the *Velikanje* case, *supra,* we said that every case

of this character rests essentially upon its own facts. In that case, also, there was no proof of the agreement as there was here, the agreement being derived by the court from the general intention of the decedent as testified to by witnesses.

It was also laid down as a rule in the *Alexander* case, *supra,* that past favors may be adopted as part of the consideration, and the testator may fix upon anything not unlawful as a consideration and put his own value upon it, whether it be greater or less. This is especially true of personal services. It also was said in the *Velikanje* case that the extent of the consideration is measured by the breadth of the undertaking, rather than by the eventuality. See, also, 36 Cyc. 673 and 674; 25 R. C. L. 588 and 589.

Respondent was decedent's next of kin. Appellants were more remote. The contract was neither unnatural nor improbable. Decedent had received many benefits from respondent for which he was grateful, and had the right to place his own value upon them. The fact that, when he became ill, or, as he called it, "disabled," in his agreement with respondent, and received care in his last illness only four days, does not militate against the validity of the contract.

Having examined the evidence in this case, we are much more impressed with the disinterestedness and straightforward-honesty of the testimony on behalf of respondent, than by that on behalf of appellants, as doubtless, also, the trial court was.

Appellants further contend that an application made by them for a continuance for the purpose of procuring a deposition from a doctor named Reed, who first attended decedent when he became ill, and who resided and practised at Casland, a village in or near the Teanaway, for the purpose of contradicting, if possible, the evidence of witnesses for respondent,

to the effect that, when decedent was first taken suddenly ill at his home, he desired to execute his will in favor of respondent, but was too ill to do so, and was prevented by the physician, who happened to be in the adjoining house and was called to attend decedent that night, from attempting to execute the will.

The trial court denied the application, apparently, on the ground that it was not timely, and that appellants had not exercised due diligence in ascertaining the nature of his testimony and that the testimony of the doctor might be necessary. The showing made for a continuance was very vague and slight. It was not even shown that material evidence would be obtained or that it would be favorable to appellants. While it might have a remote bearing upon the issue in question, it certainly was no abuse of discretion for the trial court to deny the application.

We consider the decree of the trial court right and just, and it is affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.