[No. 26974. Department Two. July 19, 1938.]

LEWIS A. WAYMAN *et al., Appellants,* v. IDA R. MILLER, *as Administratrix, et al., Respondents.*[1]

*H. J. Welty* and *Louis A. Dyar,* for appellants.

*John D. Evans, King & King,* and *Hanna, Wilkinson & Evans,* for respondents Ida R. Miller *et al.*

*F. L. Stotler,* for respondent Jacob Breeze.

[1]Reported in 81 P. (2d) 501.

BEALS, J.—During the year 1899, Samuel H. Breeze was a bachelor, and was residing on his quarter section of valuable farm land in Whitman county. His young nephew, Lewis A. Wayman, who had been residing in Illinois, joined his uncle in Whitman county during the month of March. Upon his arrival, Wayman took up his residence with his uncle, and worked in and about the farm, as a lad of that age would probably do.

In October, 1902, Samuel H. Breeze married Elizabeth Rogers. At the time of the marriage, Mr. Breeze owned the 160 acres of land upon which he had been living for some time. Mr. and Mrs. Breeze had no children, and lived simple and frugal lives, acquiring additional acreage in Whitman county sufficient to bring their holdings there to 735 acres, and also purchased a 340 acre farm in Walla Walla county. These tracts of land comprised the bulk of their wealth.

Mr. Breeze died intestate in Walla Walla county, May 16, 1934, and Mrs. Breeze died intestate in the same county, October 14th following. Ida R. Breeze Miller was appointed administratrix of each estate, and is now acting as such.

Lewis A. Wayman instituted this action against Mrs. Miller, as administratrix of the two estates, and against many other persons named as heirs at law of Mr. or Mrs. Breeze, alleging in his complaint that he and Samuel H. Breeze, prior to the latter's marriage, had entered into an oral contract, by the terms of which Wayman was to remain with Mr. Breeze and bear towards him the relation of a son, and that Mr. Breeze in turn would make a will and devise to his nephew the farm in Whitman county. The complaint further alleges that, after the marriage of Mr. Breeze, he and his wife jointly made the same contract with plaintiff, who was to take the place of a child in the Breeze home and remain with his uncle and aunt and care for

them as long as they should live, both Mr. and Mrs. Breeze agreeing that plaintiff should receive the Whitman county property. Plaintiff also alleged that, although Mr. Breeze repeatedly promised to make a will in accordance with his agreement with plaintiff, Mr. Breeze failed to do so, and died intestate. Plaintiff prayed for a decree establishing the contract which he claimed to have made with his uncle and aunt, and awarding him the 735 acre farm situated in Whitman county.

Thereafter, one Henry Breeze, also a nephew of Samuel H. Breeze, filed in the action an answer and cross-complaint, alleging his relationship to Mr. Breeze, and that in the year 1886, Mr. Breeze, as a penniless youth, had come to the state of Washington, and for six or seven years thereafter had made his home with cross-complainant's parents and had lived with them and had been treated by them as a son; that Samuel H. Breeze had an affectionate regard for cross-complainant, Henry Breeze, and, realizing the great value of the kindness and services rendered to him by cross-complainant's parents, Samuel H. and Elizabeth Breeze agreed between themselves as to the testamentary disposition of their farm lands and other property, and agreed that the 340 acre farm in Walla Walla county should be by them devised to cross-complainant, Henry Breeze.

He further alleged that Samuel H. Breeze died before executing any will, but that Elizabeth Breeze, just prior to her death, executed a document which she termed her last will, by which she bequeathed the Walla Walla county land to Henry Breeze. It is further alleged that, by reason of the facts alleged, a trust had arisen and become fixed upon the estates of Samuel H. and Elizabeth Breeze in favor of Henry Breeze, the prayer of the cross-complaint being that a decree

be entered establishing such a trust as against the heirs of the two decedents and the administratrix of their estates.

The administratrix and many of the heirs appeared in the action and denied the allegations contained both in the complaint and in the cross-complaint. The cause was tried to the court and resulted in a decree dismissing both the complaint and the cross-complaint. From this decree, plaintiff, Lewis A. Wayman, and cross-complainant, Henry Breeze, have appealed. Each assigns error upon the denial of the relief which the parties respectively demanded. It was stipulated that all evidence should be considered in connection with the claims of both Lewis A. Wayman and Henry Breeze.

Much evidence was taken, and the trial court filed a comprehensive memorandum opinion. While it appears that both Mr. and Mrs. Breeze on several occasions discussed the matter of making wills, it appears that neither one ever executed a will. On one occasion, after her husband's death, Mrs. Breeze consulted a lawyer, apparently with the idea of preparing her will, and she thereafter, in her own hand, wrote out on note paper an informal document, as follows:

"My Last Will

"I would bequeath to L. A. Wayman and wife of Pullman, 540 acres of the Pullman ranch. The Place called the old Monlux place (Southwest of Pullman) to have the use of while they live then it goes to their heirs. And to Jacob S. Breeze of Irvington, Ill., (S. H. Breeze brother 200 joining the five hundred of which 160 was the old home of S. H. Breeze. To have the use of the 200 while he lives then to go to his heir (a daughter). . . .

"I would bequeath the ranch at Waitsburg called the Wagnor land 340 acres to Henry Breeze to have the use of while he lives then to go to his heirs. To Ida May Miller, 933 Alvarado Terrace, Walla Walla, 112 acres of the Ingles place to have the use of while she

lives then to go to her [Note: The word 'heirs' was written but marked out]. . . .

"The residue of the money if any to be divided among the mentioned heirs, marker must be put on the graves not costing less than one hundred apiece.

[Signed on margin] ELIZABETH R. BREEZE."

The writing was admitted in evidence over respondents' objection, and we agree with the trial court that its wording and appearance show that it was intended to serve as a memorandum merely. Appellants do not contend that the document is entitled to probate as a will, but argue that it supports their respective contentions.

Appellant Wayman relies upon an alleged agreement which was first made with his uncle and later renewed between himself and his uncle and aunt. In substance, he contends that it was agreed that he was to take the place of a child in the home, and was to remain with and care for his uncle and aunt as long as they should live and perform toward them all the duties of a son, he to receive as compensation the Whitman county farm. He contends that the evidence shows that he performed his part of the agreement and rendered a great deal of service on the farm, and that, by reason of his having fully performed his part of the contract, he is entitled to the decree prayed for in his complaint.

This court has many times held that such relief as that demanded by appellants will be granted in proper cases. *McCullough v. McCullough*, 153 Wash. 625, 280 Pac. 70; *In re Krause's Estate*, 173 Wash. 1, 21 P. (2d) 268. To obtain relief under such a contract, the claimant must establish the same by evidence which is clear, definite, and certain, beyond all reasonable criticism. In the case of *Henry v. Henry*, 138 Wash. 284, 244 Pac. 686, in which a contract of the same nature was sought to be established, it is said:

462

"The evidence, to sustain such oral promises, we have said, must be conclusive, definite, certain and beyond all legitimate controversy. . . . We are prepared to make, and are justified in making, a statement even more stringent than that, and to hold that one seeking to establish an oral contract, whereby property of the deceased is sought to be taken, must establish all the elements of the contract and a right to have it enforced beyond all reasonable doubt. Without such a rule, no estate of any considerable size is safe from claims that it has been devised and bequeathed by word of mouth."

It is also true that the nature and value of the consideration for the promise to make some testamentary disposition is a matter to be largely determined by the person who promises to reward the same through a will. If the evidence shows beyond legitimate controversy that the agreement was made, in the absence of fraud or deceit, the value of the consideration for the promise, while still an element which may be considered, is not of controlling importance.

Claims to enforce alleged oral promises to bequeath or devise property by will are always by the court regarded with suspicion. This court, in the case of *Alexander v. Lewes*, 104 Wash. 32, 175 Pac. 572, referring to such litigation, said:

"Cases of this kind are not favored, and when the promise rests in parol are even regarded with suspicion, and will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the deceased. Waterman, Specific Performance, § 41."

In the later case of *Eidinger v. Mamlock*, 138 Wash. 276, 244 Pac. 684, we said:

"The danger incident to the establishment of the existence of such an oral agreement has been emphasized by this court, and the necessity of proof of the most convincing nature to establish such an agreement

has been repeatedly held by this court. . . . . [Citing cases.]"

In the case of *Henry v. Henry, supra,* we said:

"With recurring frequency this court is being called on to establish claims such as the one presented here; which are in effect the assertion of oral wills. It is useless to repeat what has been so often said in this character of cases, that the courts look upon such claims with suspicious eyes."

In the recent case of *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917, this court affirmed a decree awarding specific performance of an oral contract of a decedent, again calling attention to the fact that such contracts are not favored in law and are viewed by the courts with suspicion, continuing:

"The courts also recognize that such contracts are easily fabricated and hard to disprove. As noted in our own decisions, alleged oral contracts to devise property have become so frequent in recent years as to occasion alarm and cause courts to become very conservative, and even strict, with reference to the nature of evidence required to establish such contracts, which operate to the detriment and disinheriting of lawful heirs who would otherwise be entitled to the estate. *Wall v. McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631."

We shall now consider the evidence in connection with Mr. Wayman's claim. Mr. Wayman, as a lad, came to the state of Washington in 1899. He contends that he came at the suggestion of his uncle, and it may be assumed that this is true. In any event, he visited his uncle and worked with him during the harvest season of 1899, for which he received compensation. The following winter, Mr. Breeze went east, and Wayman stayed on the farm, caring for the stock, for which he received no pay. The following year, Wayman went to work for a neighbor, the late William L. LaFollette,

Senior, and until 1909, remained continuously in his employ. Mr. Wayman then married and rented a farm from Mr. LaFollette, which he was still operating as a tenant at the time of the trial. Mr. and Mrs. Breeze, after their marriage in 1902, continued to reside on the Whitman county farm until 1930, when they moved to the farm which they had purchased in Walla Walla county, where they thereafter resided. Upon their removal from Whitman county, they leased their farm to successive tenants, but never to appellant.

It appears beyond question from Wayman's own testimony that he never lived in the home of his uncle after the latter's marriage, and never remained with his uncle and aunt, but on the contrary, saw them only occasionally. The most that can be said is that Wayman occasionally accommodated his uncle and aunt by executing commissions on their behalf and by looking out for the farm on the rather rare occasions when they absented themselves therefrom for a day or so. On one occasion, when Mr. Breeze was a candidate for public office, Wayman drove him around a bit during the campaign.

Two farmers, near neighbors of Mr. Breeze, together with their respective wives, were called as witnesses by respondents. They had lived on farms adjacent to the Breeze farm for over twenty years, and saw and talked with Mr. and Mrs. Breeze very frequently, indeed almost every day. They testified frankly and with evident candor, apparently without any prejudice for or against either side. Appellant introduced evidence to the effect that Mr. and Mrs. Breeze had on different occasions stated that they were going to leave the ranch to Wayman, but none of the four witnesses above referred to had ever heard either Mr. or Mrs. Breeze make any such statement. Their testi-

mony on this phase of the case was, of course, negative, but it is nevertheless entitled to weight.

Wayman lived approximately six miles from the Breeze home, and while for over twenty-five years Mr. Breeze was operating his farm and increasing the size thereof, which required the employment of more men to operate the farm, so far as the evidence discloses, Mr. Breeze never suggested that Wayman assist him or participate in the conduct of the farm. The evidence introduced on Mr. Wayman's behalf as to what he did for his uncle and aunt, or as to what they wanted him to do for them, is vague in the extreme. On the other hand, he introduced several witnesses who testified that Mr. Breeze had on different occasions stated that Wayman was to get his property, that his land was going to Wayman, that he would have the home place, and that Mr. Breeze made other statements of similar import. One witness testified that Mr. and Mrs. Breeze told him that they had agreed with Wayman that, if he would remain nearby and be a son to them, they would leave him the farm.

While affirmative evidence of this character is entitled to consideration, and carries more weight than mere negative evidence like that of the four neighbors above referred to, it is not evidence of the most satisfactory nature, and most of the testimony last above referred to indicates little more than that Mr. and Mrs. Breeze, at one time or another, intended to make wills in favor of their nephew. Such testimony has very slight probative value in support of appellant's attempt to enforce a contract.

In the case of *Wall v. McEnnery's Estate*, 105 Wash. 445, 178 Pac. 631, we referred to testimony concerning conversations heard long before as "the weakest known to the law," and in the case of *Frederick v. Michaelson*,

138 Wash. 55, 244 Pac. 119, used the following language:

"The testimony in this case is largely that of witnesses as to conversations with, and statements made by, the deceased many years ago, to the effect that he intended to give his property to the appellants. This kind of testimony is, by its very nature, of the weakest character known to the law. [Citing cases.]"

Appellant strongly relies upon the written memorandum made by Mrs. Breeze a short time before her death. This document is not entitled to much weight. It clearly shows that Mrs. Breeze was anxious to be fair, or even generous, to her husband's relatives. It does not appear from the record that she was on intimate terms with any of her own kinfolk, and had she carried out her evident intention to make a will, doubtless she would have treated her husband's relatives most liberally. The memorandum does not in all respects support Mr. Wayman's claim that he had made a definite contract with Mr. and Mrs. Breeze. He contends that they had promised him the entire farm, while the memorandum indicates that Mrs. Breeze intended to devise only 540 acres to Mr. Wayman and his wife, in which they should have merely a life estate, with remainder to their children.

The evidence in connection with appellant Wayman's claim is voluminous. Further review thereof would serve no good purpose. The admitted physical facts carry great weight, and while we find no occasion to criticize the testimony of any of appellant's witnesses, we agree with the trial court in holding that the evidence introduced by appellant Wayman, taken in connection with all the facts shown by the entire evidence, does not make a record which measures up to the degree of proof necessary to support a decree in appellant's favor. The affection of Mr. and Mrs. Breeze

for their nephew is clearly shown, and it appears probable that they desired that he receive in due time a substantial portion of the property which they owned. The evidence, however, falls far short of establishing the oral contract upon which this appellant bases his claim. The trial court, who patiently heard the evidence and carefully reviewed the same in a memorandum, was decidedly of the opinion that, in view of the authorities, the prayer of appellant Wayman's complaint should be denied; and examination of the record convinces us that, in so ruling, the trial court was correct.

We shall now consider the appeal of Henry Breeze from the decree dismissing his cross-complaint. Appellant Breeze does not rely upon any contract between himself and his uncle, Samuel H. Breeze, or with Samuel's wife, Elizabeth, or with both of them jointly. His contention seems to be that the record shows that Mr. and Mrs. Samuel H. Breeze orally agreed between themselves that they would make mutual wills whereby they would devise to appellant Henry Breeze the land owned by them in Walla Walla county, which was generally known as the "Waggoner farm;" that Mr. Breeze died before making such a will; and that thereafter, either in an attempt to carry out the agreement, or as an aid in fulfilling the same, Elizabeth Breeze wrote the memorandum, the pertinent portions of which are above quoted. Appellant contends that, from the evidence, it should be held that a trust arose in his favor, and that the same should be enforced against respondents, as heirs of Mr. and Mrs. Samuel H. Breeze, appellant praying for a decree executing the trust.

Appellant Breeze calls attention to the history of the family in eastern Washington, which dates from the advent of Robert M. Breeze (the father of appel-

lant Henry Breeze), an elder half-brother of Samuel, who came to the state in 1875. Samuel H. Breeze came to Washington as a boy of nineteen, and for thirteen years lived with his older brother Robert, forming a member of his household. The evidence shows that Robert Breeze generously assisted his younger brother when the latter sought to establish himself as the owner of a farm, and doubtless Samuel maintained for his brother and the latter's family a sincere affection. It is suggested that, on one occasion, Samuel and Elizabeth Breeze offered to take their nephew, Henry, into their home, which offer was declined. Evidently, the two families for many years saw little of each other, but when Samuel and Elizabeth moved to their ranch in Walla Walla county, the association was renewed, and the evidence indicates that Samuel felt an affectionate interest in his nephew's welfare, and that through Samuel's good offices, Henry, who had not prospered, was afforded an opportunity to lease a farm, which he was still operating at the time of the trial of this action.

The next scene in the drama shows the family gathered together at the funeral of Samuel Breeze. Naturally, the matter of whether or not Samuel had left a will was discussed, and some statements were made by the widow to the effect that she and her late husband had agreed concerning the testamentary disposition of their property which they desired to make. It was also testified that Elizabeth Breeze said that if her husband had made a will, she was sure he would have told her that he had done so. Some witnesses testified that Elizabeth Breeze intended to execute a will carrying into effect the supposed agreement between her and her late husband.

Both Samuel and Elizabeth Breeze died suddenly, and upon the death of the latter, Ida Breeze Miller, the

administratrix, found among the effects left by Mrs. Breeze a tin box, which contained the holograph above referred to. Appellant Breeze argues that, from the record, it should be found that this holograph was written pursuant to an oral agreement entered into between Samuel and Elizabeth Breeze, and that, upon the whole record, including the holograph, the provisions thereof should be carried into effect, to his advantage.

Appellant argues that certain decisions of this court, involving mutual wills made or to be made by husband and wife, support his contention. On the other hand, witnesses who were friends of Mrs. Elizabeth Breeze testified that, after the death of Mr. Breeze, Mrs. Breeze had stated that her chief concern was to ascertain what Mr. Breeze had wished done with his share of the property, and that she did not know what his wishes were in this connection.

Appellant is asking the aid of a court of equity in enforcing, for his benefit as a third party, an agreement alleged to have been made between two other persons, his uncle and aunt.

It is only natural that a husband and wife, enjoying each other's confidence, would discuss between themselves the matter of the disposition of their property, with particular regard to the persons who should receive it after the death of the survivor. Doubtless, Mr. and Mrs. Breeze did discuss this matter, and very probably spoke of leaving their nephew Henry a substantial legacy. Neither one, however, ever made a will, although they fully understood the importance of so doing, and Mrs. Breeze, after her husband's death, apparently took some steps looking toward the making of a legal testamentary disposition of her estate. There is nothing in the memorandum which she wrote which indicates that she intended to carry out any plan upon

which she and her late husband had agreed. The evidence falls far short of disclosing any agreement between Mr. and Mrs. Breeze which could have been enforced against the survivor, and in our opinion, the record fails to disclose any evidence which forms a basis for any substantial claim on the part of appellant Henry Breeze. The fact that his uncle and aunt intended to make wills in his favor gives him no rights, they never having carried their intentions into execution.

Naturally, the fact that Mrs. Breeze indicated that she expected to make a will, by the terms of which, had she made it, Henry Breeze would have received property of considerable value, induces him to use all legitimate means in his power in an attempt to realize the benevolent intentions evidently entertained by his aunt, but the record affords no basis sufficient to justify a court of equity in granting appellant Breeze the relief he desires. The authorities which he cites do not support his contention, and discussion thereof would not be profitable.

As courts have often said, cases such as this, considering both appeals, are controlled by certain general principles, but each case must be decided upon its own facts. Careful consideration of the record before us convinces us that the trial court properly held that neither appellant Lewis A. Wayman nor appellant Henry Breeze is entitled to the relief which they respectively demanded.

Finding no error in the record, the decree appealed from is affirmed.

MILLARD, BLAKE, ROBINSON, and SIMPSON, JJ., concur.