[No. 26482. *En Banc.* August 3, 1938.]

*In the Matter of the Estate of* JAMES B. MURPHY, *Deceased.*

YOUNG MEN'S CHRISTIAN ASSOCIATION, *Respondent,* v. ESTHER MURPHY et al., *Appellants.*[2]

*Poe, Falknor, Emory & Howe* and *Van A. Neher,* for appellants.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

*Kumm & Hatch,* for *amici curiae.*

ON PETITION FOR REHEARING.

PER CURIAM.—The original opinion in this case, affirming the judgment of the superior court, was filed August 16, 1937, and appears in 191 Wash. 180, 71 P. (2d) 6. Thereafter, appellants filed a petition for rehearing, which was granted. On rehearing of the cause, the judgment of the superior court was reversed, as appears by an opinion of this court filed February 3, 1938, and found in 193 Wash. 400, 75 P. (2d) 916. Thereafter, respondent

[1]Reported in 80 P. (2d) 778.

[2]Reported in 81 P. (2d) 779.

filed a petition for rehearing, to which appellants duly made answer.

Upon consideration of respondent's petition and appellants' answer, a majority of this court adheres to the opinion filed February 3, 1938, and reported in 193 Wash. 400, 75 P. (2d) 916.

ROBINSON, J. (dissenting)—I desire to avail myself of the privilege, seldom exercised but for which there is ample precedent, of dissenting from an order denying a petition for rehearing in this case, the last opinion in which is reported in 193 Wash. 400, 75 P. (2d) 916. The petition denied by the above order raised a far more important question than whether the Y. M. C. A. or the Murphy heirs should possess the Murphy camp. It is with that larger question that this dissent is primarily concerned.

*A contract, founded upon a valuable consideration, whereby one of the contracting parties agrees that at his death his property shall belong to the other, is valid and will invariably be enforced at the suit of the promisee if the consideration has been performed.* This rule is nearly as old as the equity system and has been applied by a hitherto unbroken line of authorities both in England and America. For a full and general statement of the rule, see 68 C. J. 565, *et seq.*

That the cases supporting and applying this rule are legion may be readily determined by resorting to the general digest system. The rule is most frequently applied in cases involving contracts to make a will or to leave property to the promisee, but is quite often applied in cases wherein one partner has promised another that upon his death all of his share in the partnership property shall go to that other. Perhaps, the leading case of this type is *McKinnon v. McKinnon,* 56 Fed. 409, wherein the eighth circuit court of appeals reversed a district court which, deceived by the superficial resemblance, had mistakenly held that such a contract in writing was an instrument testamentary in character. See, also, *Stewart v. Todd,* 190 Iowa 283, 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1272, and particularly *Hole v. Wilmarth,* 274 Mass. 186, 174 N. E. 232, 73 A. L. R. 980, a recent case from a jurisdiction which has been especially strict in enforcing its statute of wills. In enforcing such a partnership contract, the court said:

"*The statute of wills, however, does not prevent an owner of property from stipulating by contract for the disposition of his property at the time of his death.*" (Italics mine.)

With respect to the application of the rule to contracts to make a will, it is quite unnecessary to go outside our own jurisdiction, for this court has never questioned the applicability of the rule to such cases, but, on the contrary, has applied it at least a dozen times within the past ten years. Examples of this line of decisions are: *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Olsen v. Hoag,* 128 Wash. 8, 221 Pac. 984; *McCullough v. McCullough,* 153

Wash. 625, 280 Pac. 70; *Avenetti v. Brown,* 158 Wash. 517, 291 Pac. 469. There are a number of others; one of them, *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917, was published in our advance sheets only five weeks before the opinion in this case was published.

There is nothing unique or unusual in the line of decisions just referred to. Similar decisions are to be found in great numbers in the reports of every jurisdiction whose system of jurisprudence is derived from the law of England. I know of no instance, and I feel confident that none can be found, where any court has held that to allow a recovery in such a case would be to condone a violation of the statute of wills. On the contrary, every case of that description, in and of itself, demonstrates the existence and the soundness of a proposition of law which the majority opinion wholly ignores and, in effect, denies, and that is, that *one has as much right to control the devolution of his property at death by contract as by will.*

No will is, of course, enforced or given effect in such cases. The cases are grounded upon the fact that the decedent made no will. The inescapable fact is that, in every such case, the plaintiff recovered the property involved upon a showing that he performed his part of a simple bilateral contract which he had with the decedent in which the decedent promised that the title of certain property should go to him after decedent's death. It is an equally inescapable fact that, in such cases, the plaintiff was to get nothing, and got nothing, until the promisor died. These cases enforce contracts, in which no present interest passes, which take effect in passing title only upon and after the death of the former owner, and which are not executed in the manner provided for the execution of wills, but, in fact, are, in the majority of instances, not even in writing.

It would, therefore, seem reasonable that we should reexamine this matter, in view of the more than *grave* doubt raised by these cases as to the soundness of the following broad and sweeping generalizations upon which the decision of the majority is based.

"We should not lose sight of the rule that, whether the instrument is, in form, a deed or a contract, if the transfer of the property depends and is conditioned upon the death of the grantor and no present estate passes, the instrument will be held to be a will. If such instrument is not executed with the formality the statute requires for a will, such instrument is unenforceable. . . ."

"Where the provision of an instrument, in the form of a deed or contract, postponing its taking effect until after the death of the grantor, is construed as passing a present interest in the grantee, the instrument is a deed or a contract. Where, however, the provision postponing its taking effect until after the death of the grantor is construed as passing an interest not to take effect until the death of the grantor or maker of the instrument, the instrument is testamentary in character, notwithstanding that, in

form, it may be a deed or contract. That is to say, the rule is that an instrument containing a provision postponing its taking effect until after the maker's death, which passes an interest that is revocable and ambulatory, is testamentary in character. . . ."

I invite attention to the following quotation from *Chas. J. Smith Co. v. Anderson*, 84 N. J. Eq. 681, 95 Atl. 358:

"Now, if an agreement to devise by a will is legally binding and enforceable, it cannot be logically reasoned that a contract to convey after death is obnoxious to, and in contravention of, our statute of wills. The covenant is in no sense testamentary. *It is contractual and irrevocable, and not benefactory and ambulatory, which are distinguishing features of wills.*" (Italics mine.)

The rule enforced in the class of cases which I have just discussed, being founded upon the simple principle that equity will not countenance or permit a fraud, but will see to it that one who has furnished the consideration he agreed to furnish shall not be deprived of the consideration he was promised in return, is equally applicable if no will is mentioned, and the gist of the promise is merely that the promisee shall receive certain property, or that it shall be left to him or belong to him at the death of the promisor.

See the opinion by Roscoe Pound, until lately, and for many years, Dean of the Harvard Law School, written when he was a commissioner of the supreme court of Nebraska, in the case of *Best v. Gralapp*, 69 Neb. 811, 96 N. W. 641, 99 N. W. 837. We have, in our own reports, an outstanding example of this type of case in *Velikanje v. Dickman*, 98 Wash. 584, 168 Pac. 465. In that case, a father kept his son working his ranch by such oral promises as the following:

"When I go I can't take the ranch with me, and it will surely be yours. When I go you get the ranch, so you are taking care of it for yourself."

In enforcing that oral contract, this court said, through Judge Ellis:

"The evidence was certain as to the parties, the property and the services to be rendered, but was not so certain as to how the title was to pass. This last is not an essential. *A promise to leave the property in return for support or services need not specify how title is to pass. It is sufficient if an agreement is shown that the promisee shall receive the property, or that it shall be left to him at the decease of the promisor.*" (Italics mine.)

A reference to Shepard's Washington Citations shows that, up to the issuance of the last supplement in May, 1938, the *Velikanje* case had been eight times cited by this court with approval. It was regarded as good law, at least as late as a few weeks before the opinion was published in this case, for it was the very first case cited in *Resor v. Schaefer, supra,* a unanimous departmental opinion published in our advance sheets on January 12th of this year.

That there is no distinction between a contract to make a will and one where the promisor merely promises that upon his death the property shall go to, or belong to, the promisee, is also recognized in the case of *Henry v. Henry,* 138 Wash. 284, 244 Pac. 686, where the plaintiff sued upon an alleged oral contract wherein the promise relied upon was, if the plaintiff would devote his time to his uncle's business, "that, when the uncle died, the meat packing business should belong to his nephew." Recovery was denied, but only because "the facts . . . to our mind, do not meet up to that standard required to establish an oral contract to convey property at death," a statement which, of course, admits, by implication, that such a contract may be lawfully made and even that it may be made orally. It is interesting to note that Mr. James B. Murphy was the leading counsel for the prevailing party in that case, and that he took due precautions that the Y. M. C. A. should never be forced to meet that contention by carefully reducing his contract to writing.

In this type of case, the rule has been uniformly applied and the contract enforced if (1) its existence was clearly proved, and (2) the consideration had been performed. In this case, there was no doubt but that Murphy made the contract with the Y. M. C. A. It was in writing, and we had it before us; nor was there any doubt but that the Y. M. C. A. furnished the promised consideration. Yet, the majority, in the decision as to which a rehearing is asked, held the contract not enforceable because, they said, no present interest passed. 193 Wash. 400, 75 P. (2d) 916. The opinion made no reference whatever to the *Velikanje* case or any other of that long line of cases, yet they would seem to be in point; and, indeed, the legal position of the Y. M. C. A. in the case at bar would appear to be much stronger than that of the son in the *Velikanje* case, for he had to overcome serious objection that the contract did not state how the title was to pass. In this case, the contract itself covered that matter with the utmost clarity. I quote from it as follows:

"'. . . and said transfer and passing shall not be regarded as a gift or devise, but for a good and sufficient consideration, and the executors or administrators or personal representatives of said lessor [Murphy] are hereby authorized, directed and empowered upon his death . . . to execute any and all conveyances which may be necessary and proper to vest in the said lessee."

See the note on the decision in the instant case in the University of Pennsylvania Law Review May, 1938, page 792.

I come now to the larger question presented by the petition for rehearing and to which I referred in the beginning. Since no reference was made to the *Velikanje* case or to the dozen or so others of our cases decided upon the same principle, or to the rule of decision employed in such cases, I can well believe the repre-

sentations of the petition for rehearing that many members of the bar are ·somewhat mystified by the decision in this case and earnestly desire an answer to this or some equivalent question: Will it be sufficient, in attempting to enforce such contracts in the future, to prove the contract and its performance, or is it going to be necessary to also prove that a present interest passed?

I suppose the denial of the petition for rehearing must be construed as being tantamount to a declaration that, in the future, it will be necessary to prove the passing of a present interest, and therefore it may be said that the law is not left uncertain. Yet, it is almost unthinkable that the court intends to permanently engraft a new and seemingly wholly unnecessary qualification upon the rule which has so long been in force in all jurisdictions deriving their system of jurisprudence from the law of England and one which our own decisions have so repeatedly and so lately approved.

While I am not able to quote it exactly, I remember reading in an opinion by Judge Oliver Wendell Holmes a statement to the effect that, in many instances, it is, perhaps, more important that the law should be certain than it should be right. This might well be thought to be an example; for the very prevalence of this type of case in our reports is a sure indication that such contracts are being constantly made, and that many of them must now be in course of performance. It would seem, therefore, that we should be ready and, indeed, eager to dispel any justifiable doubts which we have ourselves created concerning the law governing such contracts. The petition for rehearing in this case offered the court an easy opportunity to do this by simply granting the petition and, after reargument, rendering a new opinion, either (1) distinguishing the published opinion in this case; or (2) if that cannot be done, by withdrawing it before it becomes final; or (3) frankly stating that it is intended to announce a new rule for the future, if that is, in fact, the intention of the majority.

In other words, this petition presented to the court the alternative of granting it and assuring the members of the bar a reasonable standard by which to advise their clients, or to deny it and leave them to speculate and guess at what the law is, until another case comes up involving this point. I feel compelled to dissent from the order of the court adopting the latter course, because I cannot see or imagine a single good or defensible reason for its adoption.

The case presented to this court by the petitioning litigant may be briefly, but accurately, stated as follows: The decedent promised during his lifetime that I should have this land if I did certain things. I have done those things; that is, I have furnished the stipulated consideration. Give me the land. So

far, the only answer this court has made to that prayer is: Gifts to take effect at death must be made by will. That is, of course, perfectly sound law, but the petitioner says, and rightly, that it has nothing to do with the case submitted. The petitioner does not seek to enforce any form of devise or bequest. It merely says: I want the land for which I furnished the consideration as per contract. If A says to B, do this and you shall have my farm at my death, and B promises to do the stipulated thing, is that not a good contract? And if B performs, is he not entitled to the farm upon A's death? The *Velikanje* case, *supra,* and a dozen more of·our decisions say yes to both of these questions.

It is true that the contracts in most, if not all, of those cases were oral. Is it by any chance contended that the contract in this case is bad because it is in writing?

It must, I think, be implicit in the constitutional provision requiring this court to give its decisions in writing that such decisions shall deal with the real question presented by the case. The real question presented by this case, and particularly by the petition for rehearing, is: Why, in the light of our former decisions, is this not an enforceable contract? That question has not been answered. It is no answer to refer the petitioner to an opinion which arbitrarily gives the written instrument another name and, having done so, applies principles of law which no one would question or dispute.

Furthermore, and over and above that, the petition presents a question of great public concern. The opinion, concerning which a rehearing is respectfully requested, seemingly unsettles fundamental legal conceptions which have long obtained in this state and seemingly disregards rules of decision which this court has, heretofore uniformly, applied, and without question renders highly uncertain our whole body of law concerning contracts providing for the devolution of property at the death of the owner. Such contracts, as I have already said, are very common. If there be a sound legal ground upon which the opinion can be reconciled with our own previous opinions and the universal current of authority—and out of respect for my associates I concede that there may be—I can imagine no good reason why the court should withhold it. On the other hand, the reasons why it should have eagerly seized upon the opportunity presented by the filing of the petition seem too obvious to require statement or discussion.

HOLCOMB, J., concurs with ROBINSON, J.

BEALS, J. (dissenting)—In my opinion, the petition for a rehearing should be granted.