[No. 27110. Department One. August 11, 1938.]

*In the Matter of the Estate of* JOHANNA L. FISCHER, *Deceased.*

CHARLES W. L. FISCHER, *Respondent,* v. MARIE SOAMES *et al., Appellants.*[1]

[1]Reported in 81 P. (2d) 836.

42

*Eugene F. Hooper, Joseph Matsen,* and *Eli M. Paulson,* for appellants.

*R. W. Miller,* for respondent.

STEINERT, C. J.—Respondent herein filed his petition in the superior court seeking (1) to have the purported last will and testament of his deceased wife declared null and void, and (2) to enforce specifically an alleged oral contract between the spouses wherein, according to the allegations of the petition, they agreed to pool their separate properties and to make mutual wills whereby the survivor should take the entire estate. Trial before the court resulted in findings, conclusions, and decree denying the petition as to the first cause of action, but granting it as to the second. The parties designated herein as appellants have appealed from that part of the decree which is adverse to them.

Respondent, Charles W. L. Fischer, married Johanna L. Fischer on October 6, 1917. Mr. Fischer was then forty-six years of age; Mrs. Fischer was forty-two.

Respondent had been married once before, but was divorced from his former wife. By his first marriage he had one child, a daughter, who lives with her mother. Johanna L. Fischer, who had emigrated from Denmark to this country in 1914, had also been married before, but whether she afterwards became a widow or was divorced does not appear.

At the time of the marriage of Mr. and Mrs. Fischer, respondent owned two vacant lots in Bellingham subject to delinquent taxes and assessments, an unimproved ten-acre tract near Silverdale, in Kitsap county, a contract equity representing a payment of $150 on a lot in Bremerton, and a small amount of furniture, the value of which property in the aggregate was about $1,500; Mrs. Fischer had about seven hundred dollars in cash. Shortly before their marriage, respondent gave his intended wife one hundred dollars with which to buy furniture for their home.

On November 3, 1917, the husband and wife made mutual and reciprocal nonintervention wills, by the terms of which each bequeathed and devised to the other his or her entire estate and each appointed the other executrix or executor of their respective wills. It is alleged and contended by respondent that these wills were the product of, and made pursuant to, a previous oral contract between the parties wherein they had agreed to live together as husband and wife and protect and care for each other for the rest of their natural lives, to pool their separate properties and hold them as community property, and to make mutual and reciprocal wills whereby the survivor should take and receive the entire property.

Throughout their married life, Mr. and Mrs. Fischer lived in Bremerton, where Mr. Fischer was employed as a shipwright in the Puget Sound Navy Yard until his retirement on pension. Mrs. Fischer at all times did

the housework and for a brief period was employed in a local tailor shop. The pay checks and earnings of the husband were all handled by the wife, who kept the records and paid all household expenses out of those funds. The record discloses that she was a careful business woman.

During the early years of their life together, the Fischers lived in the Bremerton property, which respondent previously had purchased on contract. Improvements were made thereon, toward which Mrs. Fischer contributed four hundred dollars of her separate funds. She also contributed two hundred fifty dollars of her money toward the purchase of a secondhand automobile, which was used by them as a family car. Being industrious and thrifty, the couple were increasingly prosperous.

In 1924, respondent sold the Bellingham property and realized therefrom nine hundred sixty dollars. This amount, together with accumulated funds and a loan from a bank, they invested in 1925 in the purchase of another house, which they occupied as a home, in Bremerton. The deed to this latter property was taken in the names of both husband and wife. Subsequent improvements thereon were made with community funds. The acreage near Silverdale was later conveyed by both parties, at the suggestion of Mrs. Fischer, as a gift to respondent's nephew.

Appellant Marie Soames, who resided in Seattle, was the sister of Mrs. Fischer. The families of the two sisters were on intimate terms and frequently visited each other. On November 11, 1929, Mrs. Fischer, while visiting her sister in Seattle, had a new will drawn by a lawyer who was Mrs. Soames' attorney. The will made no mention of respondent, but bequeathed two hundred dollars to a sister residing in Denmark and devised the remainder of the estate to Mrs Soames. The sister who

lived in Denmark died before the trial of this action; appellants Helmund are her daughters. Respondent knew nothing of the later will until informed thereof by Mrs. Soames on the day that Mrs. Fischer was buried.

Mrs. Fischer died on January 19, 1937. Shortly thereafter, both of her wills were filed for probate. Respondent petitioned for probate of the first will and for his appointment as executor; Mrs. Soames petitioned for probate of the later will and for her appointment as executrix. Upon a hearing before the court, the later will was admitted to probate, but respondent, as surviving spouse, was appointed administrator with the will annexed. The estate was inventoried and appraised at $8,050. Respondent then petitioned for family allowance and was awarded the sum of one hundred dollars per month. Shortly thereafter, however, respondent filed his present petition attacking the later will on the ground that it had been executed through fraud and undue influence on the part of appellant Soames and, in the alternative, by way of equitable relief, asking that the oral contract already referred to be specifically enforced. A demurrer to the petition was overruled.

After a hearing on the merits, the court denied the petition as to the first cause of action, but at the same time expressed the view that, in its opinion, there was something wrong with the later will. The court was apparently led to that conclusion by reason of the testimony of a number of witnesses to the effect that they had heard Mrs. Fischer frequently state, both before and after 1929, that Mrs. Soames was to have certain personal articles, such as clothing and fancy work, but that respondent was to have, under her will, all the rest of her property. That this was Mrs. Soames' understanding of the later will is partially borne out by the

fact that, after Mrs. Fischer's burial, Mrs. Soames went to Bremerton and, with the consent of respondent, took a number of things of a personal nature which had belonged to her deceased sister. The court, however, held that there was not sufficient evidence to set the later will aside on the ground of fraud or undue influence.

On the second cause of action set forth in the petition, the court found and held that an oral contract, as alleged by respondent, had been entered into between the spouses, that it had been fully performed by respondent, and that it, therefore, should be enforced specifically to the end that all the property, which was community property, should be vested in respondent. From this portion of the decree, this appeal was taken.

Upon their assignments of error, appellants make three contentions, the first being that the court erred in not sustaining the demurrer to the petition on the ground of misjoinder of causes of action. It is claimed that the two causes of action could not properly be united in the same petition because the rules of evidence applicable to the one were different from and inconsistent with those applicable to the other; that, in the first cause of action, evidence would be admissible which, in the second cause, would be prohibited by Rem. Rev. Stat., § 1211 [P. C. § 7722], relating to testimony by an interested person as to any transaction had with, or statement made to him by, a deceased person.

Conceding, for present purposes, that the two causes could not be united in the same action, the error, if any, was without prejudice and the point is now of no moment, for the reasons (1) that no evidence transgressing Rem. Rev. Stat., § 1211, was offered or admitted, and (2) that the first cause of action was dismissed and the decree, in so far as it was favorable to

respondent, was based exclusively on the issues presented by the second cause.

■ Appellants next contend that the evidence was insufficient to establish a valid contract to make mutual irrevocable wills. This presents the principal question in the case.

In considering this question, it is necessary to have in mind certain principles which this court has frequently announced and consistently followed as the law in cases of this kind.

Contracts to devise or bequeath property, although not favored in law, are nevertheless enforcible, if the terms of the contract, the intention of the parties, and the adequacy of consideration are established to the satisfaction of the court by the degree of proof required, and no fraud, overreaching, or other inequitable circumstances of controlling effect is shown. *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Andrews v. Andrews,* 116 Wash. 513, 199 Pac. 981; *Olsen v. Hoag,* 128 Wash. 8, 221 Pac. 984; *Perkins v. Allen,* 133 Wash. 455, 234 Pac. 25; *Avenetti v. Brown,* 158 Wash. 517, 291 Pac. 469; *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *Wayman v. Miller,* 195 Wash. 457, 81 P. (2d) 501.

An oral promise to make a will or an oral contract to devise or bequeath property must be established by evidence that is conclusive, definite, certain, and beyond all legitimate controversy. *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Wall v. McEnnery's Estate,* 105 Wash 445, 178 Pac. 631; *Andrews v. Andrews,* 116 Wash. 513, 199 Pac. 981; *Frederick v. Michaelson,* 138 Wash. 55, 244 Pac. 119; *Eidinger v. Mamlock,* 138 Wash. 276, 244 Pac. 684; *Henry v. Henry,* 138 Wash. 284, 244 Pac. 686; *Lohse v. Spokane & Eastern Trust Co.,* 170 Wash. 46, 15 P. (2d) 271; *Clark v. Crist,* 178 Wash. 187, 34 P. (2d) 360; *Lager v. Berggren,* 187 Wash. 462, 60

P. (2d) 99; *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *Wayman v. Miller,* 195 Wash. 457, 81 P. (2d) 501.

A contract to devise real estate or to bequeath and devise both real and personal property is within the statute of frauds, and to escape the nullifying effect of the statute a sufficient part performance or full performance of the contract must be shown. *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796; *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041; *McClanahan v. McClanahan,* 77 Wash. 138, 137 Pac. 479; Ann. Cas. 1915A 461; *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501; *Cavanaugh v. Cavanaugh,* 120 Wash. 487, 207 Pac. 657; *Swingley v. Daniels,* 123 Wash. 409, 212 Pac. 729.

In the very nature of things, each case of this kind must rest upon its own peculiar facts and circumstances. *Alexander v. Lewes,* 104 Wash. 32; 175 Pac. 572; *Avenetti v. Brown,* 158 Wash. 517, 291 Pac. 469; *Lohse v. Spokane & Eastern Trust Co.,* 170 Wash. 46, 15 P. (2d) 271; *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *Wayman v. Miller,* 195 Wash. 457, 81 P. (2d) 501.

In this case, there was no written memorandum evidencing the contract. No evidence was produced, or could be produced, by anyone connected with, participating in, or present at the making of, the alleged oral agreement. At the time of the trial, both Mrs. Fischer and the scrivener who drew the mutual wills were dead. Respondent, though asserting the contract in his pleading, was precluded, by the provisions of Rem. Rev. Stat., § 1211, from testifying on the subject. Mrs. Soames was not present when Mrs. Fischer's first will was drawn and knew nothing about the circumstances of its execution. The other two appellants did not attend the trial.

For proof of the contract, respondent was compelled to rely upon the testimony of numerous witnesses concerning statements made to them by Mrs. Fischer, considered in the light of the conditions and relations continuously existing between the spouses and their acts following the agreement and confirmatory thereof.

Eleven witnesses were produced by respondent to establish the oral contract. Of these, two were the nephew and niece of respondent; the other nine were persons who had been intimate friends and neighbors of the Fischers for many years and who had frequently exchanged visits with them. The testimony of these witnesses related to conversations had with Mrs. Fischer in which she made definite statements concerning the understanding and agreement existing between herself and respondent respecting their property and wills. While the details of the several conversations varied according to the particular times and circumstances at and under which they were had, they all related to the same subject, were entirely consistent with each other, and were of the same general purport.

To set forth the testimony of each of the witnesses would be tedious as well as unprofitable, for it would be largely a matter of repetition. The substance of the testimony, taken as a whole, upon the particular issue, is that Mrs. Fischer, upon numerous occasions, emphatically stated that, at about the time of their marriage, or shortly thereafter, she and respondent had agreed between themselves that they would put their separate properties together, to be considered and held as community property; that they would also make mutual wills, each willing his or her estate to the other; that, at the death of one, the survivor was to receive the entire community property; and that, because they had thus arranged their affairs, they had nothing to worry about.

We are mindful of the fact that this kind of testimony, by its very nature, is not all that could be desired; nor is it intrinsically very strong unless forcefully and creditably cumulative and free from contradiction or suspicious circumstances. It may be conceded that it is but a degree stronger than similar evidence of a contract to make a will in the future. Such evidence, in general, involves not only the credibility of the witness, but also his power accurately to recollect and his ability clearly to repeat what was said to him long prior to the time when he is called upon to give his testimony.

But, after all, the problem of the trier of the fact in all such cases (in this instance the court) is whether the contract has been satisfactorily established by evidence that is conclusive, definite, certain, and beyond all legitimate controversy. The duty of such trier of the fact, then, is to consider the evidence, of whatever nature it may be, together with all the facts and circumstances of the particular case, and to affirm or deny the contract according to a resulting fixed conviction or lack of conviction of its existence. The result must depend upon the amount of evidence and the extent of the conviction which it carries.

In this case, the record discloses that the trial judge had definitely in mind the rule by which he was governed, and that he was convinced beyond all doubt that the oral agreement had been made, as respondent had alleged and contended.

As to the credibility of the witnesses for respondent, there can be no doubt that the court was fully satisfied on that score, for the record contains the positive affirmation of the trial judge that he knew the witnesses and believed that they were telling the truth. As to their recollection of what Mrs. Fischer had told them, her statements pertained to a positive act, easy to com-

prehend, which she affirmed had taken place, and not to a mere intention on her part to do some uncertain thing in the future. Their narration of the statements made by Mrs. Fischer was definite and specific and reflected her understanding and determination with as much clarity as if she herself were directly expressing them.

In his memorandum opinion, the trial judge said:

"The testimony establishes conclusively, in my opinion, that at the time of their marriage these two people made a definite oral agreement with each other that each would put his separate property into the community pool in order that it should become community property, and that on the death of either spouse the community estate should go to the survivor. . . .

"Witness after witness, local people of high character and standing, took the stand to testify that all during this long period Mrs. Fischer rather frequently referred to the contract into which she and her husband had entered, spoke of the wills, counseled her friends to act likewise, and gave every indication that she consistently relied upon her agreement and intended to perform her part in it. . . ."

Further, in referring to the later will, the court said:

"If valid, it breached her contract with her husband, conflicted with her announced intention to leave Mrs. Soames only her personal effects, and gave the lie to twenty years' speech and conduct. If deliberately and knowingly made, it stamps her a secretive, two-faced, dishonest woman, which is refuted by all the testimony about her. . . ."

The court finally summed up the case in this language:

"In its simplest analysis, the case here presents this situation: Mr. Fischer has given property to his wife in consideration of her promise to will her community estate to him should she predecease him. He fully performed his half of the contract. As far as that goes, I am convinced in my own mind that Mrs. Fischer

closed her eyes for the last time under the impression that she too had carried out her share of the bargain. But assuming she did not, her husband relied upon her word, changed his position, relinquished his separate property as such, made his will, and stands before this court today in a situation which appeals strongly to the conscience of the chancellor."

A careful reading of the testimony, which is without contradiction, leads us to the same conclusion as that reached by the trial court. We hold that the oral contract was established by the degree of proof required.

As to the effect of the statute of frauds, we need only state what has already been suggested by the remarks of the trial court; there was full and adequate performance of the contract by the respondent, sufficient to take it without the restrictions of the statute. Moreover, there was, initially, full and adequate performance by Mrs. Fischer herself, and she could not thereafter recede from the contract, even if she had desired to do so.

Appellants' final contention is that the court erred in refusing to award them costs and attorneys' fees on the dismissal of the will contest instituted by respondent. The statute on which this contention is based is Rem. Rev. Stat., § 1389 [P. C. § 10020a], which reads:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess the costs against the contestant, which costs may in the discretion of the court include a reasonable attorney's fee."

In support of their contention, appellants cite the following cases: *In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435, which held that it was an abuse of discretion to award costs *against a contestant* who had made out a *prima facie* showing of probable cause for con-

testing the will; *In re Geissler's Estate,* 110 Wash. 14, 187 Pac. 711, which held that the law does not give an unsuccessful *contestant* of a will the right to an attorney's fee, and that an allowance of such fees is a matter of discretion with the court, subject to review for abuse; *In re Hille's Estate,* 117 Wash. 205, 200 Pac. 1034, which held that it was erroneous to award an attorney's fee *against a contestant* who had brought the action in good faith and had made a *prima facie* case; *In re Chapman's Estate,* 133 Wash. 318, 233 Pac. 657, citing the above statute and holding that, if the contest of the will be instituted in good faith and under a fair degree of discretion concerning the facts, attorney's fees ought not to be imposed *against an unsuccessful contestant; In re Vaughn's Estate,* 149 Wash. 291, 270 Pac. 1030, holding that, since it is incumbent upon the executor to defend the will, it is proper that he be allowed costs and reasonable attorney's fees for so doing.

The statute, according to its express terms, makes the matter one of discretion with the court. The cases cited interpret the statute in its application to given sets of facts, and relieve the contestant of costs where he has instituted a contest in good faith and made a *prima facie* showing of probable cause.

But neither the statute nor the cases cited meet the exact situation presented here. This proceeding is not exclusively a will contest under the statute. The petition comprised two separate and distinct causes of action; (1) a will contest, and (2) a suit in equity to enforce the oral agreement. While the respondent did not prevail on the first cause of action, he did prevail on the second, and thereby obtained full relief, for the effect of the enforcement of the oral contract was to invalidate the later will. The respondent was, therefore, the prevailing party in the action, and the court

54

did not err, in this instance, in refusing to allow appellants costs and attorneys' fees · in making a defense against the entire action.

The decree is affirmed.

SIMPSON, MAIN, HOLCOMB, and GERAGHTY, JJ., concur.